JIMMY CANO, Petitioner, v. THE VILLAGE OF DOLTON, Department of Public Works, *et al.*, Respondents.

First District (2nd Division)   No. 1—92—0003

Opinion filed July 20, 1993.

Carl K. Turpin, of Chicago, and Cook County Legal Assistance Foundation, of Harvey (Eugene Edwards, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Kimberly W. White, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Human Rights Commission.

Kusper & Raucci, Chartered, of Chicago (Stanley T. Kusper, Jr., of counsel), for respondent Village of Dolton.

JUSTICE SCARIANO delivered the opinion of the court:

Petitioner Jimmy Cano seeks direct review of an order of the Illinois Human Rights Commission which granted a summary decision in favor of respondent Village of Dolton. We affirm.

On February 23, 1988, petitioner filed with the Illinois Department of Human Rights (DHR) a notarized charge of discrimination alleged to have been perpetrated by respondent Village of Dolton, Department of Public Works (Dolton). His complaint claimed that he was informed by letter on February 17, 1988, that his application for a position as a laborer in the Dolton department of public works had been rejected because he was deemed unsuited for the position. He denied that contention, maintaining that he was fully capable of performing the duties of a laborer, a job which warrants minimal qualifications. He averred that the true reason he was denied employment was due to his Mexican heritage and also because he was 40 years old when he was rejected for the position.

After an investigation of his charges, DHR filed a complaint with respondent the Human Rights Commission (HRC or Commission), which alleged that petitioner was 40 years old when the discriminatory events had transpired, that he had applied for the position on December 24, 1987, and was notified that he had been rejected for the job on February 17, 1988. It further asserted that the reasons given by Dolton to explain why petitioner was not hired were merely pretextual, and that the actual reason was that he was older than the other less qualified applicants, all of whom were under 40 years of age. The complaint stated that an agent of Dolton's had admitted that it hired one of the individuals because "he was young." Accordingly, Dolton was charged with violating the Illinois Human Rights Act (Ill. Rev. Stat. 1989, ch. 68, par. 1—101 *et seq.*).

In its answer to DHR's complaint, Dolton generally denied that petitioner's age played any role in its rejection of his employment application. It explained that the purported statement of one of its agents upon which DHR had based its complaint was taken out of context and, further, that the statement must be deemed to have expressed only the views of that person, as he had no authority to act as spokesperson for the many Dolton officials who participated in, and concurred with, the decision not to hire petitioner.

Dolton also raised two affirmative defenses to the alleged civil rights violation. The first asserted that petitioner initially learned that he would not be hired on January 12, 1988, two days before his fortieth birthday, and was therefore not within the purview of statutory protection from age discrimination when it allegedly occurred. Dolton's alternate defense was the simple assertion that it based its decision not to employ petitioner on factors other than his age which were both proper and reasonable.

Dolton moved for "summary judgment pursuant to section 2—1005 of the Code of Civil Procedure."[1] It alleged that because petitioner had failed to comply with the 28-day limit to respond to its discovery demand which had included a request for admissions, he must be deemed to have admitted the facts requested. Among the desired admissions was that when discriminated against, petitioner was not

---

[1]Since the pending complaint was brought not before any circuit court of this State, but before the Human Rights Commission, we believe that the Code of Civil Procedure is inapplicable. Instead, we assume that Dolton was referring the Commission to the summary decision procedure offered by the controlling statutory scheme: section 8—106.1 of the Illinois Human Rights Act. Ill. Rev. Stat. 1989, ch. 68, par. 8—106.1.

yet 40 years old. Dolton also included with its motion the affidavit of Robert Pilat, who served as Dolton's director of personnel and who attested that petitioner phoned him on January 12, 1988, to inquire into the status of his job application. Pilat averred that he informed him on that date that petitioner would not be hired for the position as a laborer.

Dolton moved HRC seeking an order compelling petitioner to comply with its request for answers to interrogatories and for the production of documents, but the resolution of the motion was continued until August 20, 1990, providing petitioner an additional 21 days to comply with Dolton's discovery requests. At the same time, he was granted leave until August 6, 1990, to serve his own discovery requests on Dolton. The administrative law judge reserved ruling on Dolton's motion for "summary judgment" until discovery was completed.

Petitioner filed a motion in opposition to Dolton's motion for summary order on October 19, 1990, wherein he stated that he had complied with Dolton's discovery requests on August 22, 1990, and explained that his tardiness was due to difficulties encountered by his counsel in obtaining his signature and that of a notary in order to verify his responses. He filed no counteraffidavit which contradicted Pilat's attestation that petitioner learned that he would not be hired on January 12, 1988; instead, as an exhibit to his motion in opposition to summary decision, he affixed a copy of his answers to Dolton's interrogatories, which we presume, he had served on Dolton. In his responses to the interrogatories, he stated that he first learned he would not be employed by Dolton when he received the letter from Pilat dated February 17, 1988, officially announcing his rejection. He agreed that on January 12, 1988, he spoke with Pilat but he recalled that on that date he was informed only that no hiring decision had been reached. The copy filed with HRC, as it appears in the record before this court, was neither signed by petitioner nor notarized.

On January 14, 1991, administrative law judge Anne E. Whitney wrote to petitioner's counsel of record to advise him that for the purposes of the pending motion for summary decision, the unverified copy of his answers to Dolton's interrogatories would not serve as an adequate counterweight to the affidavit of Pilat. Emphasizing the word "verified," her letter went on to explain that there must be verified responses presented to the Commission before a genuine issue of fact could be found to exist with regard to when petitioner first learned that he would not be offered a position by Dolton. She asked

that petitioner correct the oversight by proffering the proper papers to HRC as soon as practicable.

Judge Whitney waited for a reply to her letter until April 9, 1991, when she made her recommendation to HRC on Dolton's motion for summary decision. Since, even after the letter she sent to his counsel, petitioner still failed to file either an affidavit or a verified copy of his answers to Dolton's interrogatories, she was forced to accept as true the facts averred in the Pilat affidavit and to conclude therefrom that petitioner was aware on January 12, 1988, that he would not be hired by Dolton. As a result, because he was 39 years old on that date and because the protection from ageism applies solely to persons from ages 40 to 70, she determined that he was not within the protected class of individuals as defined by section 1—102(a) of the Human Rights Act (Ill. Rev. Stat. 1989, ch. 68, par. 1—102(a)) when the purported age discrimination took place. She therefore recommended that a summary order be entered in Dolton's favor and that the complaint be dismissed.

Before HRC entered an order on Dolton's motion for summary decision, petitioner raised exceptions to the recommended order of the administrative law judge. He argued that his verified charge to DHR, the finding of a DHR investigator that there existed substantial evidence that he had been discriminated against because of his age, the verified complaint filed by DHR and the copy of his answers to Dolton's interrogatories combined to create a question of fact as to when he learned that he would not be hired. He urged that until this question was resolved, no order should issue from HRC. HRC disagreed and found that the administrative law judge had ruled correctly. It accordingly adopted her recommendation and ordered petitioner's complaint dismissed on November 27, 1991.

## I

The first issue before this court concerns our very ability to consider this petition. Dolton contends that under Supreme Court Rules 303(a)(1) and 335(h) (134 Ill. 2d Rules 303(a)(1), 335(h)), in order to vest this court with jurisdiction, a petition for direct appellate review of orders of HRC must be filed within 30 days of the issuance of that order. It argues, without conceding the point, that even if it were to grant that petitioner filed his petition on January 2, 1992, when he claims he did, that date would be an untimely 35 days after the order was handed down by HRC.

Dolton rests its argument on *County of Cook, Cermak Health Services v. Illinois State Local Labor Relations Board* (1991), 144 Ill. 2d

326, 579 N.E.2d 866, wherein our supreme court held that the period within which to file a petition for direct appellate review of a decision of a local labor board would be the 30 days provided in Supreme Court Rule 303 rather than the 35 days allowed by section 3—103 of the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—103). Dolton reads this opinion to hold that the legislature may never exercise its constitutional power to provide for direct appellate review of administrative decisions (see Ill. Const. 1970, art. VI, §6) so as to allow petitioners any time other than 30 days to file petitions for review. It contends accordingly that the 35-day time frame for filing petitions as expressly provided in the Human Rights Act (Ill. Rev. Stat. 1991, ch. 68, par. 8—111(A)(1))[2] is of no import and that this court must dismiss the petition for want of jurisdiction.

■ However, Dolton reads the *Cermak Health* case too broadly. The court did not express the expansive belief that whenever the legislature authorizes the filing of a petition for direct appellate review of administrative decisions which does not precisely comport with the 30-day time limitations of Rule 303(a), it will have unconstitutionally usurped the supreme court's constitutionally recognized primacy over the State's judiciary. Instead, the *Cermak Health* court recognized that under the constitution, where the concern is the promulgation of procedural rules addressing direct appellate review, the two branches share concurrent authority. (*Cermak Health*, 144 Ill. 2d at 334, 579 N.E.2d at 870.) Rather than the broad holding suggested by Dolton, we conclude that the court narrowly found that the legislature could not exercise its concurrent power by implication, and it therefore overruled an appellate court decision which had held that where the General Assembly authorizes direct appellate review, it was to be assumed that it intended to apply the 35-day limit of the Administrative Review Law. Ill. Rev. Stat. 1991, ch. 110, par. 3—103.

In *Merwin v. State Board of Elections* (1992), 229 Ill. App. 3d 236, 239, 593 N.E.2d 709, 712, this court summarized the rule of *Cermak Health* as follows:

"Generally, a supreme court rule will preempt a legislative enactment when the latter does not expressly state a period for

---

[2]The statute provides in pertinent part:

"Judicial Review. Any complainant or respondent may apply for and obtain judicial review of a final order of the [Human Rights] Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days after entry of the order of the Commission, in accordance with Supreme Court Rule 335." Ill. Rev. Stat. 1991, ch. 68, par. 8—111.

filing an administrative review complaint. [Citation.] Conversely, a supreme court rule will not preempt a statute where the statute explicitly sets forth a time period for seeking administrative review, as the subject is initially considered to be within the province of the legislature. [Citation.]"

(See also *Central City Education Association v. Illinois Educational Labor Relations Board* (1992), 149 Ill. 2d 496, 533, 599 N.E.2d 892, 909, quoting *Cermak Health* for the proposition that "although *the legislature could have explicitly stated in the [Act] a time within which direct review of administrative orders must be commenced*, it did not do so" (emphasis added).) It is clear, therefore, that Dolton misapprehends *Cermak Health*, and it is likewise plain that the 35-day appeal period expressly set forth in the Human Rights Act controls review of the HRC orders; therefore, petitioner's filing, if made on the thirty-fifth day after HRC served its order, would be timely and would vest this court with direct review jurisdiction.

## II

██ Both respondents join in asserting next that even if this court applies the 35-day statutory limitation period, the petition for review in the instant case was filed on the thirty-sixth day following issuance of HRC's final order as evidenced by the appellate court clerk's file stamp bearing the date January 3, 1992. As a result, they maintain that no matter which limitation period is applicable, this court may not review the order because under either we lack jurisdiction.

As a rule, the file stamp or mark of the clerk's office can be used to establish that a paper tendered to the court was filed within the requisite time frame. (See 1 C. Nichols, Illinois Civil Practice §380, at 497 (rev. ed. 1991) ("The file mark on a paper required to be filed raises the presumption that it was delivered to the proper officer for filing at a date indicated by the file mark"); see also *Gage v. Nichols* (1890), 135 Ill. 128, 25 N.E. 672; *Polka v. Turner* (1989), 182 Ill. App. 3d 705, 538 N.E.2d 640.) However, the file stamp is only *prima facie* proof of the date when the paper was filed, not a conclusive presumption of filing. It may be rebutted by an affidavit which attests that the filing was tendered on a date other than that appearing on the stamp. See *Turner*, 182 Ill. App. 3d 705, 538 N.E.2d 640 (holding that affidavits offered to show that the complaint was tendered five days before date reflected on file stamp were factually insufficient to rebut presumption created by file stamp).

Here, the petition bears two dates. The first has the date January 2, 1992, and the second shows January 3, 1992. The first date stamp was obscured by pen scratchings and was superscribed "Void." In an affidavit accompanying his reply brief to this court, petitioner's attorney related that on January 2, 1992, he tendered to the clerk of this court the petition for review, and it was time stamped January 2, 1992, 4:22 p.m. He was informed by a court official that he could not be assigned a case number that day because the clerk's computers were not operating. He was instructed to call the office the next day in order to discover his case number. The affidavit went on to disavow any knowledge of the voiding of the January 2, 1992, file stamp and the subsequent restamping on the next day. He also averred that he served counsel for Dolton with a copy of the petition bearing only the January 2, 1992, stamp. Neither respondent offers anything which contradicts these assertions, which we find more than adequate to rebut the presumption arising from the multiple time stamps. Thus, we must conclude that, consistent with the affidavit, petitioner filed his petition for review on the thirty-fifth day after HRC rendered its final order. Pursuant to section 8—111 of the Human Rights Act, we may therefore assert jurisdiction and consider the merits of the petition.

### III

The final issue to be reviewed is whether HRC properly granted a summary order in favor of Dolton, as authorized by section 8—106.1 of the Act. (Ill. Rev. Stat. 1991, ch. 68, par. 8—106.1.) Under the statute, HRC may render a summary decision in favor of either a complainant or a respondent "if the pleadings and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a recommended order as a matter of law." Ill. Rev. Stat. 1991, ch. 68, par. 8—106.1.

The Illinois Human Rights Act prohibits discriminatory hiring practices where the decision to hire or not to hire is based on, *inter alia*, an applicant's age. (Ill. Rev. Stat. 1991, ch. 68, par. 2—101.) In order to survive a respondent's motion for summary decision, a complainant alleging age discrimination must be able to show that there exists a genuine issue of fact as to each of the following elements: (1) whether he is a member of a class of individuals protected; (2) whether he has applied for an available position for which he is qualified; and (3) that he was not given the position and it was filled by younger persons of equal or lesser qualification. (See *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 545 N.E.2d 684.) Of the three, the factor pertinent to our review is whether petitioner

was a member of the protected class which the statute limits to those individuals who have achieved the chronological age of at least 40 years when the discrimination occurs. Ill. Rev. Stat. 1991, ch. 68, par. 1—103; see also *Ring v. R.J. Reynolds Industries Inc.* (N.D. Ill. 1984), 597 F. Supp. 1277 (dismissing the plaintiff's claim for age discrimination brought pursuant to the Illinois Act because he was 39 years old when terminated from his position).

■ This court has held that for the purpose of the 180-day limitation period to file a complaint with DHR, a discriminatory event will be complete and will be considered actionable at the first instant in which a complainant receives notice of the allegedly discriminatory conduct. (*Constant v. Turris Coal Co.* (1990), 199 Ill. App. 3d 214, 222, 556 N.E.2d 823, 829; accord *Larrance v. Illinois Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 519 N.E.2d 1203, *appeal denied* (1988), 122 Ill. 2d 577, 530 N.E.2d 248; *Board of Governors of State Colleges & Universities for Northeastern Illinois University v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742.) It would seem a necessary corollary to that rule to hold similarly that whether an individual is a member of the protected class turns on his chronological age on the day the discrimination against him is complete or, put another way, his age is fixed, for the purpose of determining whether he is a member of the protected class, on the day that he is first advised that he will not be hired. In the case at bar, HRC, after applying this rule, granted summary order in Dolton's favor because, on the basis of the evidence before it, it fixed the date that petitioner was discriminated against to be January 12, 1988, two days before he fell within the aegis of the statute. It found, therefore, that no cognizable claim for age discrimination existed.

■ A summary decision is the administrative agency procedural analogue to the motion for summary judgment in the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.) Because of the similarities of the two, it would seem appropriate to employ the case law which has grown out of the summary judgment motion practice when reviewing the propriety of such an order on direct review, the only difference being that while this court reviews motions for summary judgment *de novo* (see *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 630), the Human Rights Act empowers this court to reverse a decision made by HRC only if it is against the manifest weight of the evidence. Ill. Rev. Stat. 1991, ch. 68, par. 8—111(A)(2) ("In *any* proceeding brought for judicial review, the Commission's findings of fact shall be sustained unless the court deter-

mines that such findings are contrary to the manifest weight of the evidence"). (Emphasis added.)

Petitioner contends that the record presents a factual question with regard to when he first learned that he would not be hired, and thus it was against the manifest weight of the evidence to grant summary order in Dolton's favor. He protests that it was not until he received the letter from Dolton dated February 17, 1988, at which time he was a member of the protected class of individuals between 40 and 70 years old. Respondents maintain that because petitioner offered nothing which contradicted the affidavit of Pilat wherein he swore that he notified him on January 12, 1988, that he would not be employed, his statement must be accepted as true, and in accord with that truth, petitioner has no viable claim for age discrimination.

■ Respondents are correct. Petitioner has filed no supplemental evidence with HRC which would be a legally sufficient contradiction of Pilat's affidavit. He asks this court to find that his initial charge, which was signed and notarized, along with the complaint brought by DHR, which was also verified, create a factual question because each asserts that his first notice of discrimination was on February 17, 1988, after he had reached the age of 40. But it has become axiomatic that the allegations contained in pleadings which are controverted by affidavit will not in and of themselves give rise to a triable issue of fact to deny a movant summary judgment. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Pearson v. Partee* (1991), 218 Ill. App. 3d 178, 578 N.E.2d 81.) If the party seeking summary judgment supplies facts via affidavit, which, when left uncontradicted, would warrant judgment in its favor as a matter of law, the opponent may not sit idly by and rely on his pleadings to create a genuine material factual issue. *Zannis v. Lake Shore Radiologists, Ltd.* (1982), 104 Ill. App. 3d 484, 432 N.E.2d 1108.

Petitioner also cites the copy of his answers to Dolton's interrogatories which he attached to his motion in opposition to summary decision and maintains that they negate the effect of Pilat's affidavit because one answer stated that he first learned he would not be hired on February 17, 1988. While this court has determined that, in the context of summary judgment, answers to interrogatories can serve as the functional equivalent of affidavits (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636, 502 N.E.2d 1295, 1298), that decision can apply only in those instances where the answers comport with the dictate of Supreme Court Rule 213(c) (134 Ill. 2d R. 213(c)), which holds that only sworn answers may be filed. (See also 56 Ill. Adm. Code §5300.720(a)(1) (1991) (procedural rule of HRC

which mandates that interrogatories be either answered under oath or affirmation or that an objection to a question be noted instead).) Here, the copy of petitioner's answers which were filed with HRC were not even signed, let alone verified, and thus, they may not be considered a legally recognized substitute for a signed and notarized affidavit. See *Wolf v. Liberis* (1987), 153 Ill. App. 3d 488, 505 N.E.2d 1202 (declining to ascribe any weight to unsigned and unsworn statements relied upon by plaintiff in an attempt to avoid summary judgment and holding that such evidence could not be considered on review).

It does not affect the validity of HRC's order that petitioner may have served his signed and notarized answers to the interrogatories on Dolton. Under section 8—106.1 of the Act, the decision to grant summary order is to be based on the pleadings and affidavits before the board. This court has held in the past that where a party has ample opportunity to file counteraffidavits in opposition, and yet declined to do so, the granting of summary judgment on that basis will be affirmed. (*Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 854, 543 N.E.2d 868, 871.) The omission in the instant case is particularly egregious in view of Judge Whitney's letter to petitioner's counsel where she distinctly warned him that unless he provided the verified answers to the interrogatories rather than an unverified copy of them, she would have no choice but to grant Dolton's motion for "summary judgment." She waited for the proper response for nearly three months, and when none arrived, she finally recommended summary decision in Dolton's favor, which ultimately was approved and adopted by HRC.

The need for sworn affidavit-substitutes also forebodes a similar fate for the report of DHR's investigator wherein he found substantial evidence of age discrimination. The investigator's findings were not based on any statements made by petitioner under oath and, as a result, cannot serve as a legitimate substitute for an affidavit. Finally, petitioner relates in his brief to this court that he attempted to file the verified answers with HRC after the administrative law judge had recommended dismissal of his complaint, but was denied leave to file. However, even if we were to agree that this belated attempt could have some effect on the validity of HRC's order, there is nothing in the record which evidences the purported tendering. Therefore, we cannot utilize this evidence to find that HRC's grant of summary decision was against the manifest weight of the evidence. (See *In re Marriage of Naylor* (1991), 220 Ill. App. 3d 366, 581 N.E.2d 25.) Accordingly, since in the record before this court there is no competent evidence which counteracts the affidavit of Pilat wherein he swore

that on January 12, 1988, he informed petitioner that he would not be hired by Dolton, and that on that day, being less than 40 years old, petitioner was not yet protected by the Human Rights Act, summary decision in Dolton's favor was proper.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.