655 N.E.2d 18 (1995)
274 Ill.App.3d 769
211 Ill.Dec. 358
Gary TATE, Petitioner-Appellant,
v.
AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, and the Human Rights Commission, Respondents-Appellees.
No. 3-94-0356.
Appellate Court of Illinois, Third District.
August 31, 1995.
*19 James Hatcher (argued), Rose, Hatcher, Peoria, for Gary Tate.
Michael R. Lied (argued), Husch Eppenberger, Peoria, for American General Life.
Janon E. Fabiano, Asst. Atty. Gen., Chicago, for Human Rights Com'n.
Justice SLATER delivered the opinion of the court:
The petitioner, Gary Tate, appeals from the Illinois Human Rights Commission's (Commission's) order granting summary decision in favor of the respondent, American General Life and Accident Insurance Company (American), on petitioner's age discrimination claim. Petitioner raises two issues for our review: (1) whether he received due process, and (2) whether the decision of the Commission is against the manifest weight of the evidence. We affirm.
On March 28, 1991, petitioner filed a charge of discrimination against American with the Illinois Department of Human Rights (Department). Petitioner alleged *20 that he was discriminated against because of his age. He claimed that his employment with American was terminated, and that younger agents who produced less business were not terminated. The Department filed a complaint on behalf of the petitioner.
The complaint alleged that petitioner was 53 years old and had been employed as a salesperson for American since July 26, 1982. Petitioner was the oldest salesperson employed by respondent, and also had the most seniority. The complaint further alleged that petitioner had performed his duties at an acceptable level, but that on September 17, 1990, he was placed on a four week counseling plan because of low production. According to the complaint, American had never placed a salesperson other than petitioner on a four week counseling plan because of low production. On October 5, 1990, petitioner was discharged for the stated reason that he failed to meet the objectives of his counseling plan. The complaint alleged that younger salespersons did not meet the $420 of new business per week objective of petitioner's counseling plan, but were not discharged. According to the complaint, the reasons given for petitioner's discharge were a pretext for age discrimination.
On May 17, 1993, American filed a motion for summary decision, pursuant to section 8-106.1 of the Illinois Human Rights Act (the Act) (775 ILCS 5/8-106.1 (West 1992)). In the motion, American alleged that petitioner had failed to meet his requirements for producing new business in the summer of 1990. In early September 1990 petitioner's supervisor, Thom Davis, had a meeting with petitioner during which petitioner said he would be leaving in three weeks to go work in Las Vegas. Because petitioner had produced virtually no new business for several weeks, Davis and Gary Nolley, the district manager, spoke with petitioner on September 8, 1990. Petitioner said he was considering moving to Las Vegas and told Nolley he would give him his decision by September 14.
On September 14, petitioner left the office without giving Nolley his decision. Davis and Nolley called petitioner at home to learn of his decision, and petitioner said that he was probably going to quit, but would not resign in case his plans to move to Las Vegas fell through. Nolley called the vice president of marketing services, Samuel Billante, to discuss petitioner's situation. Billante told Nolley to place petitioner on written counseling for three weeks, giving him specific production goals to meet. Nolley completed a counseling report in which he advised petitioner that he must submit applications totalling a minimum of $420.00 of annual premiums per week for each of the next three weeks. Failure to comply would result in petitioner's termination. Petitioner signed the report and commented that his father was dying of cancer and that he had spent much time during the past six weeks with his family. When Tate did not meet the objectives of the counseling report, Billante advised Nolley to terminate petitioner's employment. American argued in the motion that petitioner could not establish a prima facie case of age discrimination, and that American had a legitimate, non-discriminatory reason to terminate petitioner's employment. Petitioner did not respond to the motion for summary decision, and the administrative law judge (ALJ) granted the motion.
Petitioner then filed a "Petition for Maintaining Trial Standing and for a Copy of Motion for Summary Decision and Time to Respond Thereto." In this petition, petitioner argued that he never received a copy of the motion for summary decision and did not know such a motion had been filed. American filed a response in which it asserted that petitioner had been given notice. Petitioner then filed exceptions to the ALJ's order, arguing only that he did not receive notice of the motion for summary decision. A panel of the Commission affirmed the decision of the ALJ, finding no evidence of age discrimination. The Commission believed that if petitioner had evidence of age discrimination he should have included it in his exceptions to the ALJ's order.
Petitioner then filed a petition for rehearing before the full Commission, arguing that the allegations of his complaint created a genuine issue of material fact as to whether he had suffered discrimination. Petitioner attached the affidavits of Fred Hardwick, Jack Wells, and the petitioner to the motion. *21 Hardwick stated in his affidavit that when he was working as a district manager for American, a vice-president told the district managers that, "if any one was approaching a vested retirement, take a long look to make sure we want to retain them." Wells stated in his affidavit that he was an employee of American and asked Nolley why petitioner had been terminated. Nolley told him, "nothing personal, I just want younger people in here." Some days later, when Wells was considering trying to get Tate back at the company, he asked Nolley if the company still paid recruiting bonuses. Nolley responded, "they still pay it, but remember I want young guys in here." The Commission denied the petition for rehearing, and this appeal followed.
Petitioner first argues that he was denied due process when he did not receive notice of the motion for summary decision. We note that, for our purposes, we must consider that petitioner did receive a copy of the motion for summary decision. The administrative rules provide for service by mail with an accompanying certificate of service. (56 Ill.Adm.Code, ch. XI, § 5300.30 (1994).) The record contains a copy of the certificate of service for the motion. The certificate is in compliance with the rules. In the civil court context, our supreme court stated, in Bernier v. Schaefer (1957), 11 Ill.2d 525, 529, 144 N.E.2d 577, 579 "[i]f the proper giving of notice can now be frustrated by the mere allegation of the defendant that he did not receive it, then the giving of notice by mail cannot be relied upon even though the rules specify such a method." See also Orthopedic & Reconstructive Surgery, S.C. v. Kezelis (1986), 146 Ill.App.3d 227, 231-2, 100 Ill.Dec. 47, 50, 496 N.E.2d 1112, 1115 ("As stated, Rule 11 and Rule 12 were followed here, and Mrs. Kezelis' assertion that she had not received a copy of the notice of motion is insufficient under Illinois law to justify any suggestion that the judgment is null and void.").
Petitioner further argues that the procedures of the Act regarding summary decision do not comport with due process. Specifically, he contends that there are fewer safeguards to protect substantial rights under the summary decision section of the Act than under the provision for summary judgment in the Code of Civil Procedure. He also alleges that the procedures of the Act denied him the opportunity to present his evidence. An administrative proceeding is governed by fundamental principles and requirements of due process of law; however due process is a flexible concept and requires only such procedural safeguards as fundamental principles of justice in a particular situation demand. (Abrahamson v. Illinois Department of Professional Regulation (1992), 153 Ill.2d 76, 180 Ill.Dec. 34, 606 N.E.2d 1111.) The essence of procedural due process is notice and an opportunity to be heard. (Munoz v. Department of Registration and Education (1981), 101 Ill.App.3d 827, 57 Ill.Dec. 457, 428 N.E.2d 1137.) The rules provide that a motion for summary decision must be served upon all parties at the time it is filed. (56 Ill.Adm.Code, ch. XI, § 5300.730(a), (f) (1994).) Further, the Act and the rules provide that, in response to the motion, the non-moving party may file counter-affidavits at any time prior to the time of the ruling on the motion. See 775 ILCS 5/8-106.1 (West 1992); 56 Ill.Adm.Code, ch. XI, § 5300.735 (1994).
The Act and the rules further provide several other opportunities to be heard. The ALJ's Recommended Order and Decision is not a final order. (56 Ill.Adm.Code, ch. XI, § 5300.910 (1994).) Within 30 days of receipt of the order, a party may file written exceptions with the Commission. (775 ILCS 5/8A-103(A) (West 1992).) A party may also request oral argument at the time of filing exceptions. (775 ILCS 5/8A-103(C) (West 1992).) Finally, and most importantly for petitioner's sake, the Act and the rules provide that a party may request to submit additional evidence for the record, after issuance of the Recommended Order and Decision, by submitting a written request to do so at the time he files his exceptions or response. (775 ILCS 5/8A-103(D) (West 1992).) The request must include a statement specifying in detail the evidence which the party proposes to present, its relevance, and the reasons why such evidence was not presented at the hearing. (56 Ill.Adm.Code, *22 ch. XI, § 5300.1010 (1994).) Although looked upon with disfavor by the Commission, such a request will be granted if the Commission determines that substantial justice so requires. (56 Ill.Adm.Code, ch. XI, § 5300.1010 (1994).) Rather than following any of these opportunities to get his evidence before the Commission, the petitioner merely complained that he did not receive notice. The petitioner's failure to avail himself of these opportunities does not render the act deficient in terms of due process.
Finally, petitioner argues that the decision of the ALJ, as affirmed by the Commission, is against the manifest weight of the evidence. We believe that the proper standard of review for a grant of summary decision under the Act is de novo rather than manifest weight of the evidence. The only case that has stated the standard of review for a grant of summary decision pursuant to the Act is Cano v. Village of Dolton (1993), 250 Ill.App.3d 130, 189 Ill.Dec. 883, 620 N.E.2d 1200. In that case, the First District Appellate Court stated that, unlike a summary judgment order pursuant to the civil practice act, summary decisions under the Human Rights Act are to be reviewed under the manifest weight of the evidence standard. We disagree with Cano. It is well settled that the appellate court reviews summary judgment orders de novo. (Farmers State Bank v. National Bank (1992), 230 Ill.App.3d 881, 172 Ill.Dec. 894, 596 N.E.2d 173.) The summary decision section of the Act, like the provision for summary judgment in the Code of Civil Procedure (735 ILCS 5/2-1005 (West 1994), requires a decision be entered in favor of the moving party if there is no genuine issue as to any material fact and if the moving party is entitled to a decision in its favor as a matter of law. Therefore, the determination is a legal one, subject to de novo review by this court. We note that the Cano court erroneously relied on section 8-111(A)(2) of the Act (Ill.Rev.Stat.1991, ch. 68, par. 8-111(A)(2)), which provides that the commissions findings of fact shall be sustained unless the court determines that those findings are against the manifest weight of the evidence. Because the Cano court incorrectly applied the standard of review for a factual question to a purely legal question, we decline to follow that decision and instead apply the de novo standard of review. The Commission determined that the ALJ's conclusions were correct because there was no evidence of age discrimination. Even considering the evidence that petitioner presented for the first time in his petition for rehearing before the Commission, we conclude that the Commission's decision was a correct one. To establish a prima facie case of discrimination, the petitioner needed to show that: (1) he is a member of a group protected by the law; (2) he was performing satisfactorily; (3) he was discharged despite the adequacy of his work; and (4) a similarly situated employee who is not a member of the protected group was not discharged. (Marinelli v. Illinois Human Rights Comm'n (1994), 262 Ill. App.3d 247, 199 Ill.Dec. 624, 634 N.E.2d 463.) Petitioner could only meet the first showing. The evidence was undisputed that petitioner had produced virtually no new business for several weeks prior to being put on a counseling plan, and that petitioner then failed to meet the goals of the counseling plan. Further, petitioner failed to name a similarly situated younger employee who was not discharged. Because petitioner could not make out a prima facie case of age discrimination, the Commission's decision upholding the decision of the ALJ must be affirmed.
Affirmed.
BRESLIN and HOLDRIDGE, JJ., concur.