CATERPILLAR, INC., Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.

Third District   No. 3—86—0514

Opinion filed April 10, 1987.

Bradford L. Livingston, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and Jerome A. Kenney and Theodore R. Johnson, both of Caterpillar Tractor Company, of Peoria (Gerald D. Skoning, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kent Sezer, Special Assistant Attorney General, of Chicago, and Homer J. Tice, of counsel), for appellee Human Rights Commission.

Homer J. Tice, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellee Madeline Burwell.

JUSTICE HEIPLE delivered the opinion of the court:

Caterpillar, Inc. (Caterpillar), appeals from an order of the circuit court of Tazewell County which denied Caterpillar's motion for summary judgment and affirmed a decision of the Illinois Human Rights Commission (Commission) in its entirety. Caterpillar also appeals from the order and decision of the Commission which was affirmed by the court below. We reverse.

Madeline Burwell (Burwell) was hired by Caterpillar on September 25, 1978, as a radial drill operator. Burwell, like other Caterpillar employees, was placed on 30 days' probation when she was hired. She cut her finger while operating the radial drill on September 28, 1978, but continued to work as a drill operator through October 2. On October 3, because Burwell's finger had become infected and irritated by the liquid coolant used in operating the drill, the plant physician restricted her to dry work for nine shifts. Because of the medical restrictions, Burwell was unable to operate the radial drill and was temporarily assigned to a variety of other jobs for the next several shifts. Burwell also began attending classes sponsored by Caterpillar to train her as a radial drill operator.

On October 16, 1978, while Burwell was still unable to return to the radial drill, she was assigned to a welder's helper job which required her to operate a large air buffer. She had difficulty operating the unwieldy machine because of her injured finger, and after three or four hours, Burwell complained of sharp pain in her right elbow and was unable to continue to perform the work. She was relieved of those duties and was given a whirlpool treatment at the plant's first aid station. Because of the problem with her elbow, she was examined by the plant physician at the beginning of her next shift. At that time, Burwell was suffering from lateral epicondylitis, or tennis elbow, and the plant physician imposed a work restriction of no tight

grasping with her right hand for one year. This restriction meant that it would be impossible for Burwell to return to her job as a radial drill operator for at least one year.

For the remainder of that shift and for the next, Burwell replaced a vacationing employee and operated a hand truck, a small forklift with hand and foot pedals. On October 19, 1978, approximately 3½ weeks after she was hired, her employment with Caterpillar was terminated. On Burwell's separation notice, which was completed by a factory superintendent, Burwell was described as "unsuitable for factory work." However, the superintendent's comments on the separation notice suggested that Burwell's medical restriction was a primary factor in the decision to fire her. The notice further indicated that Burwell was never to be rehired.

Burwell filed a charge of unfair employment practices with the Illinois Fair Employment Practices Commission (FEPC). She alleged that Caterpillar discriminatorily terminated her employment because of her handicap, tennis elbow, in violation of section 3(a) of the Illinois Fair Employment Practices Act (the Act) (Ill. Rev. Stat. 1975, ch. 48, pars. 851 through 867). Following an investigation, the FEPC issued an administrative complaint against Caterpillar, alleging that Caterpillar discriminated against Burwell when it fired her because of her "temporary physical handicap."

Several procedural matters which need not be detailed here were disposed of and a hearing was held before Administrative Law Judge Sandra Jones on September 20 and 21, 1983. In her recommended order and decision, Judge Jones determined that Burwell's tennis elbow was a handicap and that Caterpillar discriminated against Burwell by terminating her because of her handicap when there were other jobs available at Caterpillar which she could have performed. The administrative law judge ordered Caterpillar to pay Burwell lost wages, to make Burwell whole as to all lost benefits and seniority status, and to pay attorney fees and costs of over $12,000. A panel of the Illinois Human Rights Commission affirmed Judge Jones' recommended order and decision on May 28, 1985. Caterpillar then sought administrative review in the circuit court and later filed a motion for summary judgment. The circuit court denied the motion for summary judgment and affirmed the decision of the Commission. Caterpillar appeals.

On appeal to this court, Caterpillar argues that Burwell's tennis elbow was not a handicap within the meaning of the Act; that even if Burwell were considered handicapped, she was not protected under the Act because the handicap was related to her ability to perform her job; and that even if Caterpillar had a duty to reasonably accom-

modate Burwell's alleged handicap, that duty did not extend to offering her jobs other than the one she was hired to fill.

Although the Fair Employment Practices Act was replaced by the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*) in 1980, it was in force when the alleged discrimination occurred. The Illinois Human Rights Commission replaced the FEPC and was authorized to adjudicate Burwell's claim. At the time of Burwell's claim, the Act authorized:

"Section 3 Unfair employment practices.

It is an unfair employment practice:

(a) For any employer, because of *** physical or mental handicap unrelated to ability of an individual *** to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment." Ill. Rev. Stat. 1979, ch. 48, par. 853(a).

The term "handicap" is not defined in the Act, but it is defined in the interpretive guidelines promulgated by the FEPC. The guidelines provide:

"Section 3.2 Definitions

(A) Physical or mental handicap shall be defined as any physical or mental impairment resulting from or manifested by anatomical, physiological, neurological or psychological conditions, demonstrable by medically accepted clinical or laboratory diagnostic techniques, and which constitutes or is regarded as constituting a substantial limitation to one or more of a person's major life activities.

* * *

(C) A 'physical or mental handicap unrelated to ability' means any handicap as defined in (A) above which, with reasonable accommodation, does not prevent performance of the essential functions of the job in question." Guidelines on Discrimination in Employment Under the Fair Employment Practices Act, art. 3, sec. 3.2 (1976).

In considering employment discrimination actions under the Act, Illinois courts have utilized the three-step analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. The plaintiff has the initial burden to establish a *prima facie* case of discrimination. If the plaintiff successfully carries the burden, the employer must then articulate some legitimate, nondiscriminatory reason for its employment decision. If the employer fulfills this obligation, the plaintiff must

prove by a preponderance of the evidence that the legitimate reason offered by the employer is a pretext for discrimination. (See *Oak Lawn v. Illinois Human Rights Com.* (1985), 133 Ill. App. 3d 221 (and cases cited therein).) Using this analysis, we find that the Commission and the circuit court incorrectly determined that Caterpillar violated the provisions of the Act; we base our decision on Burwell's failure to establish a *prima facie* case of discrimination.

■ Under the Act and the FEPC guidelines, a *prima facie* case of discrimination is established by showing that: (1) the complainant is handicapped within the definition of the Act; (2) the complainant is qualified and the handicap is unrelated to the individual's ability to do the assigned work; (3) an adverse job action was taken because of the handicap.

The parties disagree whether Burwell's tennis elbow condition constitutes a handicap under the Act. Caterpillar maintains that a common, nonsevere, and temporary condition such as tennis elbow does not substantially limit a person's major life activities as contemplated by the drafters of the Act and the FEPC guidelines. Burwell and the Commission argue that Burwell's condition fits within the definition of "handicap" intended by the Act and provided in the guidelines because it is a physical impairment which substantially limits her employment and one which Caterpillar considered to be so serious that Burwell was never to be rehired. Whether Burwell's tennis elbow is a handicap is irrelevant to our disposition in this case. The Act prohibits discrimination on the basis of handicaps which are unrelated to ability. As detailed below, the record establishes that even if Burwell's condition is a handicap, it is not protected by the Act because it is related to her ability to perform the job in question.

■ Burwell and the Commission indirectly attack the findings of fact in this case by arguing that Burwell was hired as a general factory worker. They further claim that because Burwell was not hired for a particular job, Caterpillar had a duty to assign her to one of several starting jobs she was capable of performing with her medical restriction. Caterpillar asserts that Burwell was hired as a radial drill operator and was unable to perform the job because of her physical impairment. Caterpillar contends that because Burwell's condition is related to her ability to perform the assigned work, she was not protected by the Act and the decision to terminate her did not violate the Act. We agree.

We acknowledge that in reviewing an administrative decision, this court must accept as *prima facie* true and correct the agency's findings and conclusions on questions of fact. (Ill. Rev. Stat. 1985, ch.

110, par. 3—110.) The assertions of Burwell and the Commission that she was hired as a general factory worker are inconsistent with the administrative law judge's findings of fact and are not supported by record evidence. Examination of the record reveals the following: in the charge filed with the FEPC in December of 1978, Burwell stated she was hired by Caterpillar as a drill operator; in the parties' pre-hearing memorandum, they stipulated that Burwell was hired as a radial drill operator; the administrative law judge, in her recommended order which was adopted by the Commission, included as a finding of fact, "Complainant was hired as a radial drill operator on or about September 25, 1978 as a probationary employee"; and Caterpillar sent Burwell to technical training classes so she could learn to operate the radial drill. Furthermore, in the brief Burwell submitted to this court, she at one point admits that after developing tennis elbow, "she could no longer perform her original job that she had been hired for by Caterpillar Tractor Co., to-wit (*sic*) a radial drill operator." The Commission's assertions that Caterpillar's practice was not to hire particular individuals for particular jobs, but rather to hire a class of general factory workers is not supported by the record. Because the finding that Burwell was hired as a radial drill operator is not against the manifest weight of the evidence, we will not disturb the finding on appeal.

There is no dispute that after developing tennis elbow, Burwell was unable to perform the job of radial drill operator. Her impairment made it impossible for her to perform the job in question and therefore should not have been classified as a protected handicap under the Act. Since Burwell's physical impairment was related to her ability to perform the essential functions of the job she was hired to fill, she did not establish a *prima facie* case of discrimination and her complaint should have been dismissed. The administrative law judge therefore erred in sustaining the complaint, and the Commission and the circuit court erred by affirming the administrative law judge's recommended order.

Burwell and the Commission continue to maintain that because Caterpillar had other jobs which an individual with tennis elbow could perform, Caterpillar had a duty to accommodate Burwell by assessing her ability and reassigning her to one of the several positions she may have been able to perform. We disagree. That other jobs existed at Caterpillar and that Burwell may have been able to perform them is irrelevant. The duty to reasonably accommodate only extends to accommodating a handicapped employee in the employee's present position, that is, the position for which she was hired. It does not include

a requirement to reassign or transfer an employee to another job which the employee may be able to perform. (*Carty v. Carlin* (D. Md. 1985), 623 F. Supp. 1181 (interpreting a similar Federal statute).) Even if Burwell had suffered from a handicap protected by the Act, Caterpillar's only duty would have been to make reasonable modifications if they would enable Burwell to remain in her position of radial drill operator. Caterpillar would have had no duty to transfer Burwell to any other position as a form of accommodation. Such unwarranted preferential treatment of handicapped persons does not further the intent of the Act.

For the above reasons, we find that the Commission and the circuit court erred in finding that Caterpillar discriminated against Burwell and violated the provisions of the Fair Employment Practices Act. We therefore reverse the order of the circuit court and the order and decision of the Illinois Human Rights Commission.

Reversed.

STOUDER and WOMBACHER, JJ., concur.