DARRELL N. CONSTANT, SR., Plaintiff-Appellee, v. TURRIS COAL COMPANY, Defendant-Appellant.

Fourth District No. 4—90—0226

Opinion filed June 27, 1990.

Jeffrey S. Goldman and Paul A. Olsen, both of Fox & Grove, Chartered, of Chicago, Roy O. Gulley, of Heyl, Royster, Voelker & Allen, of Springfield, and Glyn Cook, of Houston, Texas, for appellant.

Steven Nardulli and G. Michael Taylor, both of Stratton, Dobbs, Nardulli & Lestikow, and Roger Edward Ryan, both of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Section 7—104(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, par. 7—104(A)) permits either a complainant before the Department of Human Rights (Department), or the Department, after a charge has been filed with the Department, to proceed in the circuit court to seek interlocutory injunctive relief pending administrative disposition of the charge pursuant to the Act. Here, plaintiff Darrell N. Constant, Sr., filed such a charge with the Department against his employer, defendant Turris Coal Company, alleging defendant had discriminated against him because of a physical handicap "unrelated" to his work. Then, on October 2, 1987, Constant filed suit in the circuit court of Sangamon County seeking such injunctive relief.

On October 5, 1989, the circuit court entered an order requiring Turris to assign Constant, pending resolution of his charge of discrimination, to different duties than those he was then performing. The order was based upon a rule promulgated by the Department and the Illinois Human Rights Commission (Commission) which requires employers to make reasonable accommodation to the limitations of handicapped employees (56 Ill. Adm. Code §2500.40, at 5852 (1985)). On

March 5, 1989, the circuit court denied Turris' motion to dissolve the October 5 order. Turris has appealed, maintaining (1) any showing it had failed to make reasonable accommodation to Constant's disability was insufficient to support the order; (2) insufficient showing was made of the likelihood Constant would prevail on the merits; (3) the Department, the Commission, and the circuit court lacked jurisdiction to rule concerning the safety aspects of the dispute; and (4) Constant's charge was time barred. We affirm.

The basic facts underlying the dispute between the parties as shown by evidence before the circuit court are mostly undisputed. Constant lost his right hand and a portion of his right forearm in a hunting accident in 1975. On his right arm, he wears a prosthetic hook. The hook is controlled by a cable which is secured to Constant's body. The cable is operated by movement of Constant's left shoulder and arm. Constant cannot raise his prosthesis above his shoulder. As a result of Constant wearing the cable, the movement of his left arm is also somewhat limited.

Constant was hired by Turris in 1980 as an aboveground heavy equipment operator. In early 1982, his job classification was changed to "mining technician." Mining technicians employed by Turris are required to be proficient in a variety of aboveground and underground mining skills in order to permit flexibility in work assignments and thus minimize layoffs due to fluctuations in the demand for coal. For approximately six months in 1982, Constant worked underground due to a shortage of underground workers and for the purpose of being trained in underground mining work. While working underground during this period, Constant was never more than 500 feet from the mine shaft entrance.

Except for the described period of underground work, Constant was employed in aboveground work for Turris until January 1988. During this time, Constant's work performance was generally satisfactory. He was able to operate earth-moving equipment by means of special knobs, which he attached when he began working with a particular piece of equipment and removed when he was finished working with it.

On January 8, 1988, Turris assigned Constant to underground work. Constant testified at the hearing on Turris' motion to dissolve the circuit court's order for temporary relief that he immediately advised Turris' management that he was concerned about his new underground job assignment. Specifically, Constant feared that he could not properly operate a self-rescuer, which is an individual apparatus assigned to each minor in order to permit breathing in the event of an underground mine disaster. Constant feared he could not properly at-

tach a nose clip to his nose (in order to prevent noxious gases from entering his nose) or tightly strap the canister portion of this apparatus to his body so that it would not get caught on man doors or other narrow openings through which he might have to pass in an emergency situation. Turris did prepare a modified nose clip which it concluded Constant could properly operate. However, while the operation of this modified nose clip was being explained at the hearing on Turris' motion to dissolve the order for temporary relief, it broke and could not be made to close.

During the first two months that Constant worked underground in 1988, he was assigned to heavy manual labor which included such things as lifting sections of railroad rail, and building "stoppings," which involves lifting, carrying, and stacking concrete blocks, lifting and carrying sacks of mortar mix, and sealing the joints between the concrete blocks with mortar. As a result of engaging in these activities, Constant sustained two injuries in January 1988. One of these injuries caused him to miss approximately one month's work.

At the time the order granting temporary relief was entered, Constant operated a "ram car," which moves coal from place to place underground. Constant stated he does not think he can safely operate this vehicle, because due to his condition, he must take his hands off its steering wheel in order to operate its bells and lights when it passes through intersections. Also, when operating the ram car's bells and lights, Constant cannot look both ways for approaching traffic due to movement limitations imposed by his prosthesis and harness.

In an affidavit filed in support of his petition for temporary relief, Constant also expressed a fear that while working underground, he might unintentionally permit his prosthetic steel hook to come into close proximity to uninsulated electrical cables, thereby causing electricity to arc to his hook. Furthermore, Constant stated that because of his steel hook, breaks in the insulation of insulated underground electrical cables posed a greater threat to him than to his coworkers.

■ Section 7—104(A)(2) of the Act, under which Constant sued in the circuit court, states that such a proceeding "shall be governed by Part I of Article XI of the 'Code of Civil Procedure.' " (Ill. Rev. Stat. 1987, ch. 68, par. 7—104(A)(2).) Absent other statutory regulation of a particular type of proceeding, Part I of article XI governs the practice when injunctive relief is sought. The parties do not dispute that the traditional rule concerning the granting of a preliminary injunction by a circuit court requires the party seeking relief to establish by a preponderance of the evidence "(1) he possesses a certain and clearly ascertainable right or interest needing protection; (2) there is no ade-

quate remedy at law; (3) irreparable harm will result if [relief] is not granted; and (4) there is a reasonable likelihood of success on the merits." *Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1002, 516 N.E.2d 1313, 1317.

This case turns upon the question of whether Constant has made a sufficient showing of a likelihood of success. This concerns Turris' second contention on appeal. That turns mostly upon the proof in regard to whether Turris had failed to make a reasonable attempt to accommodate Constant's disability. We examine that issue first.

 Section 2—102(A) of the Act provides it is a civil rights violation:

> "For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." (Ill. Rev. Stat. 1987, ch. 68, par. 2—102(A).)

Unlawful discrimination is defined as "discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, handicap or unfavorable discharge from military service as those terms are defined in this Section." (Ill. Rev. Stat. 1987, ch. 68, par. 1—103(Q).) In regard to employment, as involved here, the term "handicap" is defined as a "physical *** characteristic of a person *** *unrelated* to the person's ability to perform the duties of a particular job or position." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 68, par. 1—103(I)(1).

The Department and the Commission have promulgated rules which require employers to take reasonable steps to accommodate handicapped employees. These regulations provide in pertinent part:

> "Employers and labor organizations must make reasonable accommodation of the known physical or mental limitations of otherwise qualified handicapped applicants or employees, unless the employer or labor organization can demonstrate that such accommodation would be prohibitively expensive or would unduly disrupt the ordinary conduct of business. Whether an accommodation would be prohibitively expensive or disruptive will involve weighing its cost and inconvenience against the immediate and potential benefits of providing it, where the immediate benefit is facilitation of the handicapped person's employment and the potential benefits include facilitating access by other disabled employees, applicants, clients and customers. Accommodation may include: alteration of the facility or work site; modifica-

tion of work schedules or leave policy; acquisition of equipment; *job restructuring*; provision of readers or interpreters; and other similar actions." (Emphasis added.) 56 Ill. Adm. Code §2500.40, at 5852 (1985).

In its October 5, 1989, order granting temporary relief, the circuit court stated: "[T]he likelihood that irreparable harm would occur to the plaintiff in the event injunctive relief is not granted overbalances the irreparable harm likely to occur to the defendant if injunctive relief is granted." The court further found that granting Constant temporary relief would not prejudice Turris. Therefore, the court ordered Turris:

"[T]o permit Petitioner Darrell N. Constant, Sr. to return to the work he performed prior to January 8, 1988, namely: Operating heavy earthmoving equipment aboveground and to other aboveground work which he performed from time to time since November 1981 and prior to January 8, 1988 which was within his reasonable physical functional capacity using his left hand and prosthetic hook with reasonable accommodation to his handicap, or in the alternative at the option of the Defendant to keep Plaintiff on the payroll at his present rate of pay without the assignment of duties to him."

Under the evidence presented, the circuit court's determination that Constant's continued assignment to work underground presented too great a risk to him was sufficiently supported by the evidence. A more difficult question is presented by the requirement placed on Turris by the preliminary injunction. As pertinent here, section 1—103(I)(1) of the Act defines a "handicap" as a "determinable physical *** characteristic of a person, including *** a determinable physical characteristic which *** may result from *** injury *** and which characteristic *** is *unrelated to the person's ability to perform the duties of a particular job or position*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 68, par. 1—103(I)(1).) Thus, here, the provision of the administrative rule permitting the Commission to order "job restructuring" must be considered in the context of section 1—103(I)(1) of the Act, which deems Constant to be "handicapped" and entitled to relief only if his disability is "unrelated" to his job.

Constant complains of his inability to safely perform the underground aspects of the job description for the position of mining technician which he has held since 1982. Some dispute exists in the evidence as to whether Constant was adequately informed of his change in status in 1982, but the circuit court concluded that the evidence was very strong that he was so informed. We are unaware of a case decided by

the appellate or supreme courts of this State where an employer has been required to accommodate by keeping an employee with a disability in the same job classification, drawing the same pay while, at the same time, relieving the employee of difficult parts of the tasks required for the position.

Constant relies on *Illinois Bell Telephone Co. v. Human Rights Comm'n* (1989), 190 Ill. App. 3d 1036, 547 N.E.2d 499, where an employee suffered a physical condition which caused her to be incapacitated for at least two days per month. She had been working in a division where the employees were permitted flexible schedules whereby they could make up lost work by working weekends. The employee was later transferred to another division where the flexible schedule program was not in use. Eventually, as the employee's lost time grew progressively worse, she was discharged. The Appellate Court for the First District upheld a Commission order requiring the employer to either transfer the employee to a division having flexible schedules or to grant her such prerogative in her present position. The accommodation required in the foregoing case did not relieve the employee of performing the work required for the position. Rather, the accommodation ordered gave her flexibility as to when the work was performed.

More nearly in point is the case of *Caterpillar, Inc. v. Human Rights Comm'n* (1987), 154 Ill. App. 3d 424, 506 N.E.2d 1029. There, a probationary employee during her early days on a job in 1978 developed a tennis elbow injury rendering her unable to perform the function of a drill operator for which she had been hired. When she was separated from her employment, she filed a complaint with the Illinois Fair Employment Practices Commission (FEPC), which then had jurisdiction of charges of discrimination against the handicapped. (Ill. Rev. Stat. 1975, ch. 48, pars. 851 through 867.) The case became the responsibility of the Commission after it succeeded the FEPC. The Commission concluded the employer could have given her other jobs to do, ordered the employer to rehire the employee, pay her back wages, and give her seniority for the time she should have been employed. The circuit court affirmed but the Third District Appellate Court reversed, holding that the employer's duty to accommodate only involved accommodation in the employee's present job and did not extend to placing the employee in another position.

Constant maintains *Caterpillar* is not analogous because at the time that employer was alleged to have discriminated, the instant Department and Commission rules requiring an employer to accommodate to an employee's disability to "job restructuring" were not in force. (56 Ill. Adm. Code §2500.40, at 5852 (1985).) Rather the em-

ployer was merely required to make a reasonable accommodation. (*Caterpillar*, 154 Ill. App. 3d at 426-27, 506 N.E.2d at 1031.) Moreover, we note that here Constant was a longtime employee who, despite his job classification, had been permitted to work on the ground level for several years while the employee in *Caterpillar* was on probation and had worked for only a few days when injured. In *Johnson & Madison Maintenance Corp.*, X Ill. Human Rights Comm'n Rep. 105 (1983), a janitor had suffered an injury impairing his ability to lift heavy weights. The employer had allowed him to obtain assistance from others with his lifting for several years. The Commission held the employer discriminated when it withdrew that accommodation and denied the janitor assistance in lifting.

■ This case presents an interesting question as to the amount of accommodation an employer can be required to make to an employee's disability in order that the disability become "unrelated" to the employee's "ability to perform the duties of a particular job" within the meaning of section 1−103(I)(1) of the Act. (Ill. Rev. Stat. 1987, ch. 68, par. 1−103(I)(1).) One question which might arise is whether, if an employer is required to accommodate an employee who cannot perform the most difficult and dangerous aspects of a job, the employer is required to continue to remunerate the employee at the rate given to those who can do so. However, we need not answer all of those questions at this stage. The supreme court has stated that the proof of likelihood of recovery sufficient to support a preliminary injunction need only be such as to raise a "fair question" of the right of recovery. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386, 483 N.E.2d 1271, 1275.

■ One of the criteria for determining whether injunctive relief is appropriate is the burden placed upon the party enjoined. (*G.H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 305 N.E.2d 317.) Here, the burden upon Turris appears to be very slight. Constant had been permitted to work at ground level almost all of the time for several years. One person of equal seniority and not shown to be disabled had also been given that privilege and several similarly classified employees of lesser tenure had been given the same privilege also. On the other hand, to require Constant to work in the mine would appear to require him to choose between work which might be very dangerous to him or to give up his job. Considering Constant's tenure and his ability to continue to ably perform important work at ground level, we deem the record to raise a "fair question" of a failure by Turris to make a required accommodation to Constant. We do not attempt to prejudge the decision the Commission may make upon this difficult question nor

do we prejudge what a decision of this court might be on possible subsequent administrative review.

■■ ■ The contention of Turris in regard to Constant's charge before the Department being time barred is also a matter for us to consider on the basis of the "fair question" standard. The Act prescribes a 180-day limitation period for making such charges. (Ill. Rev. Stat. 1987, ch. 68, par. 7—102(A)(1).) This period runs from the date the claimant first received notice of the allegedly discriminatory conduct, as opposed to the time at which the harm caused by the alleged misconduct was most acutely felt. (*Larrance v. Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 519 N.E.2d 1203, *cert. denied* (1989), 489 U.S. 1054, 103 L. Ed. 2d 585, 109 S. Ct. 1316.) The trial court concluded Constant was aware of the job requirement of work in the mine as early as 1982 and he worked underground during that year. However, at that time he apparently always worked within 500 feet of the mine shaft entrance and had no need for the rescue device he contends he is unable to operate. Thus, a "fair question" exists as to whether his administrative cause of action for discrimination did not arise until January 1988 when he was required to work in the mine in areas more than 500 feet from the shaft entrance. If this was so, his charge, filed with the Department on March 8, 1988, was timely.

■■ We find no merit in the assertion of Turris that both the circuit court and the Commission lacked jurisdiction to decide the safety aspects of the instant dispute, more particularly whether Constant was endangered by inability to use the mine rescue device. Turris points out that miners employed in mines have recourse under the Federal Mine Safety and Health Act of 1977 (30 U.S.C. §801 *et seq.* (1988)) supplemented by the Coal Mining Act (Ill. Rev. Stat. 1987, ch. 96½, par. 313). However, those legislative provisions focus upon the standards of safety for all miners. Constant makes no claim that the Turris mine fails to meet those standards. Rather, he is contending that Turris failed to make accommodation to his disability. Had he proceeded under the foregoing legislation, he would have been subject to the contention that the legislation was not applicable to his complaint.

As we have indicated, we affirm the order granting the preliminary injunction.

Affirmed.

KNECHT, P.J., and SPITZ, J., concur.