2021 IL App (2d) 200769
No. 2-20-0769
Opinion filed November 23, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THEODORE JACKSON, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-L-803 |
| | ) | |
| TSA PROCESSING CHICAGO, INC., and | ) | |
| TRESTEN SNEED & ASSOCIATES, INC., | ) | Honorable |
| | ) | Robert G. Kleeman, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1                                I. INTRODUCTION

¶ 2       Plaintiff, Theodore Jackson, appeals an order of the circuit court of Du Page County dismissing his second amended complaint against defendants, TSA Processing Chicago, Inc., and Tresten Sneed & Associates, Inc., alleging that defendants discriminated against him based on his disability in violation of the Illinois Human Rights (Act) (775 ILCS 5/101 *et seq.* (West 2012)). The trial court ruled that plaintiff's complaint was time barred and that plaintiff was not disabled within the meaning of section 1-103(I) of the Act (775 ILCS 5/1-103(I) (West 2012)). The trial court also denied plaintiff's motion to strike defendants' motion to dismiss for failing to comply

with section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). For the reasons that follow, we reverse and remand.

¶ 3                                            II. BACKGROUND

¶ 4       As this case comes to us following a motion to dismiss, the majority of the following is derived from the factual allegations set forth in plaintiff's second amended complaint. Defendants hired plaintiff to "operate a metal-cutting machine at [defendants'] plant located in Bensenville, Illinois." Plaintiff suffers from a congenital disability, called ectodermal dysplasia hydrosis. Persons suffering from this condition "have a reduced ability to sweat because they have fewer sweat glands than normal or their sweat glands do not function properly." This can lead to a dangerously high body temperature (hyperthermia). It can be life threatening. Plaintiff informed defendants prior to July 18, 2013, that he suffered from this condition. Plaintiff was able to perform his job adequately from January 7, 2013, until July 18, 2013. He further alleged that he would have been able to continue doing so if defendants had not fired him.

¶ 5       On July 18, 2013, plaintiff "became overheated due to unusual extreme Summer [*sic*] temperatures in the workplace and his inability to sweat." After unsuccessfully attempting to cool himself down, plaintiff asked a plant manager, John Torres, if he could go home early that day. Torres directed plaintiff to wait in the breakroom until plant manager Bobby Medus returned. Plaintiff attempted to comply, but the breakroom was too hot. He attempted to call Medus, but Medus did not answer his phone. Out of concern for his own safety, plaintiff left. Later that day, Torres called plaintiff and informed him that he was fired.

¶ 6       Plaintiff alleged that he was able to perform his job adequately (as shown by his successful performance of it for the six months leading up to July 18, 2013). He further alleged that he was fired in retaliation for asking for the reasonable accommodation of leaving early on one occasion.

He would have been able to continue to adequately perform his job if he had not been fired. Moreover, "Defendants had a practice of allowing other, non-disabled, employees who were injured or ill to leave work early but refused to extend this courtesy to [plaintiff] because of, and despite, his disability."

¶ 7        Plaintiff's complaint also states that he timely filed a charge with the Illinois Department of Human Rights (Department) on August 27, 2013. On January 12, 2018, the Department dismissed plaintiff's charge for lack of substantial evidence. Plaintiff appealed to the Illinois Human Rights Commission (Commission), and the Commission vacated the Department's dismissal and remanded the case to the Department for a finding of substantial evidence. The Department issued a "Notice of Substantial Evidence" (the original notice) on December 31, 2018, and mailed the notice to plaintiff the same day"; however, the notice was incorrectly addressed, as it was sent to his previous address. Plaintiff alleged that he did not receive the notice at that time. Plaintiff alleged "on information and belief" that he had notified the Department of his change of address and that the Department "possessed the information necessary to contact him." On May 6, 2019, the Department issued a correctly addressed "Amended Notice of Substantial Evidence" (amended notice), which informed plaintiff that he had a right to institute a civil action within 90 days. Plaintiff received it shortly thereafter, and he filed the instant action on July 22, 2019.

¶ 8        Defendants moved to dismiss plaintiff's second amended complaint in accordance with section 2-619.1 of the Code (*id.*). In this motion, defendants asserted that plaintiff's claim was time barred, as plaintiff failed to file his complaint within 90 days of the Department's December 31, 2018, finding of substantial evidence. Defendants further argued that plaintiff was not disabled within the meaning of section 1-103(I) of the Act (775 ILCS 5/1-103(I) (West 2012)). Plaintiff moved to strike the motion for failing to comply with section 2-619.1 in that the various arguments

advanced by defendant were not clearly labelled as to whether they were based on section 2-615 or section 2-619 (735 ILCS 5/2-615, 2-619 (West 2020)). The trial court found that, while plaintiff was correct, defendants' omission did not prevent it from understanding defendants' motion, and it therefore denied plaintiff's motion to strike.

¶ 9    Regarding defendants' motion to dismiss, the trial court agreed with both arguments and dismissed plaintiff's second amended complaint with prejudice. The trial court first addressed defendants' timeliness argument. It first noted that, under the Act, a plaintiff must file an action within 90 days of receiving a notice of substantial evidence. By administrative regulation, receipt is presumed five days after the Department mails the notice. The court noted plaintiff's claim that he did not receive the notice (plaintiff and his attorney submitted affidavits to substantiate this claim, including supporting documentation). However, it found that there was no evidence that plaintiff provided the Department with his new address. The court held that the presumption of receipt was rebuttable but that plaintiff's mere assertion that he did not receive the original notice failed to rebut the presumption.

¶ 10    As for defendants' argument that plaintiff was not disabled within the meaning of the Act, the trial court first noted that it was clear that plaintiff had a disability and that he suffered an adverse employment action. However, the Act requires that his disability be unrelated to his ability to perform his job. The trial court found that, to qualify for protection under the Act, plaintiff's disability would have to not affect plaintiff's ability to perform his job. According to the trial court, plaintiff's job included working in July. It stated, "[E]xtraordinary [*sic*] hot days in July are not uncommon around here or August for that matter." The trial court added, "[H]e can't perform the job if he can't work in July in the hot weather." The trial court then granted defendants' motion to dismiss. Plaintiff now appeals.

¶ 11                                    III. ANALYSIS

¶ 12     On appeal, plaintiff raises two main issues. First, he asserts that the trial court erred in finding his claim time barred. Second, he argues that the trial court incorrectly determined that he was not disabled within the meaning of section 1-103(I) of the Act (775 ILCS 5/1-103(I) (West 2012)). We agree with both contentions.

¶ 13     In addition, plaintiff asserts that the trial court should have stricken defendants' motion to dismiss for failing to comply with section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). Given our resolution of the first two issues, we need not address this one; though, we do agree with the trial court that defendants' omission was not significant enough to hinder an understanding of defendants' motion. We now turn to plaintiff's main arguments.

¶ 14                                    A. Timeliness

¶ 15     As this first issue concerns the timeliness of plaintiff's complaint, section 2-619 of the Code governs. See *id.* § 2-619. For the purpose of resolving a motion under this section, the moving party admits the sufficiency of the complaint and asserts affirmative matter to defeat the plaintiff's claim. *Martinez v. Cook County Sheriff's Office*, 2017 IL App (3d) 160514, ¶ 15. In ruling on such a motion, a court must construe pleadings and other supporting documents in the light most favorable to the party opposing the motion. *Id.* We review *de novo* a dismissal pursuant to section 2-619. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). "When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform." *Martinez*, 2017 IL App (3d) 160514, ¶ 15.

¶ 16     Here, defendants rely on section 7A-102(D)(4) of the Act, which provides, in pertinent part, as follows:

"If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice." 775 ILCS 5/7A-102(D)(4) (West 2012).

Defendants also rely on the following provision from the Illinois Administrative Code: "Whenever a time period commences upon a person's receipt of service or notice, and service is by mail, receipt shall be presumed to occur on the fifth day after mailing." 56 Ill. Adm. Code 2520.20 (1994). According to defendants, plaintiff was presumed to have received notice five days after December 31, 2018, when the Department mailed the original notice to plaintiff, as indicated on an affidavit of service completed by the Department at or about that time. Thus, defendants conclude, plaintiff had until 90 days after January 5, 2019, to institute this action. Since he did not do so until July 22, 2019, defendants assert, his complaint was not timely.

¶ 17    Plaintiff counters that he has produced evidence to rebut the presumption of service. He has submitted a supporting affidavit indicating that, prior to December 31, 2018, he had moved from the address to which the Department sent the original notice. The original notice was addressed to his old address. He received the amended notice (properly addressed) a few days after May 6, 2019. The original notice arrived with the amended notice, and that was the first time plaintiff saw either notice. Additionally, plaintiff's attorney averred that he requested a copy of the Department's file in this matter. In that file, he found a notice of substantial evidence and an envelope, both of which were returned to the Department by the post office on January 10, 2019. He further averred that discovery is not yet complete in this case, and he believed that he would

be able to secure testimony from a Department employee attesting to the authenticity of the returned documents.

¶ 18     As a preliminary matter, defendants assert that the presumption of service contained in the Illinois Administrative Code is irrebuttable. Defendants contend that plaintiff cites nothing that holds that the presumption at issue here may be rebutted; we note that defendants cite nothing that holds that it may not. We do note that irrebuttable presumptions have been disfavored as contrary to due process. *In re Amanda D.*, 349 Ill. App. 3d 941, 948 (2004) (citing *Vlandis v. Kline*, 412 U.S. 441, 446 (1973)). More importantly, plaintiff does call our attention to a case interpreting other provisions of the Act that are similar to the provision at issue here. In *Cigna v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 190620, ¶ 28, the court was called on to construe the phrase " 'receipt shall be *deemed* to occur on the fourth day after mailing' " (emphasis added) (quoting 56 Ill. Adm. Code 5300.20 (1992)). It relied on *Gemini Services, Inc. v. Martin*, 141 Ill. App. 3d 17, 19 (1986), where the court construed an earlier version of a similar regulation, which stated, "[s]ervice by mail shall be *deemed* complete four days after mailing." (Emphasis in original and internal quotation marks omitted.) The *Gemini Services* court contrasted the term "deemed" to language appearing in another section of the Administrative Code that stated that receipt is "presumed" four days after mailing. *Id.* at 20. The court explained the difference as follows:

> "[The former section] is couched in the mandatory language that service 'shall be deemed complete four days after mailing.' This is in contrast to the language of [the latter section] of the Commission's rules [citation], which speaks of computation of time to begin upon receipt of documents which are 'presumed' to have been received four days after mailing. There the word 'presumed' might be taken to indicate a rebuttable determination which could be negated by proof of actual receipt." *Id.*

The *Cigna* court applied this reasoning in determining that "deemed" indicated an irrebuttable presumption. *Cigna*, 2020 IL App (1st) 190620, ¶ 35.

¶ 19   While these cases do not address the precise section of the Act at issue here, they address portions of the Act serving a similar function to the provision at issue here, *i.e.*, determining when a limitations period begins to run following the mailing of notice. As such, we find them persuasive. As the provision at issue here contains permissive language, we hold that it sets forth a rebuttable presumption.

¶ 20   Defendants also contend that plaintiff failed to rebut that presumption nonetheless. Defendants characterize the affidavits of plaintiff and his attorney as "self-serving." However, at this stage of the proceedings, we must construe pleadings and other supporting documents in the light most favorable to the nonmovant. *Martinez*, 2017 IL App (3d) 160514, ¶ 15. Thus, defendants' characterization—essentially an attack on plaintiff's credibility (see *Edgewater Hospital, Inc. v. Bio-Analytical Services, Inc.*, 57 Ill. App. 3d 632, 638 (1978))—is beside the point. In his affidavit, plaintiff does aver that he moved prior to the date the original notice was issued, on December 31, 2018. In his second amended complaint, he alleges that, "[u]pon information and belief, [he] had previously notified the Department of his change of address" and that "the Department possessed the information necessary to contact him." Defendants complain that he did not state where or exactly when he moved; however, we fail to see how this information would have been material to this issue, so long as plaintiff moved from the address to which the notice was sent before it was issued. Defendants also assert that plaintiff should have identified how he notified the Department of his change in address instead of merely stating that he did so. While such information would have corroborated plaintiff's averment that he did not receive notice until May 2019, we do not believe that its omission is fatal to plaintiff's position. The record

contains an amended notice of substantial evidence dated May 6, 2019, and an affidavit of service indicating that it was mailed to plaintiff on May 6, 2019. This allows an inference that the original notice was returned to the Department; otherwise, there would have been no need for it to send out the amended notice.

¶ 21    In certain circumstances, a trial court may "decide questions of fact 'upon the hearing of the motion.' " *Consumer Electric Co. v. Cobelcomex, Inc.*, 149 Ill. App. 3d 699, 703 (1986) (quoting Ill. Rev. Stat. 1985, ch. 110, ¶ 2-619(c)). "However, in deciding [a section 2-619] motion's merits, 'a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits.' " *In re Marriage of Vaughn*, 403 Ill. App. 3d 830, 836 (2010) (quoting *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993)). Rather, " '[i]f the affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing.' " *Id.* (quoting *Crescent Pork, Inc.*, 243 Ill. App. 3d at 913). Where, as here, no evidentiary hearing was held, a reviewing court's role is simply to determine whether a genuine issue of material fact exists or whether the movant is entitled to judgment as a matter of law. *Id.* Here, given plaintiff's affidavit and the inferences documents of record allow, particularly in light of the fact that we must construe the record in the light most favorable to plaintiff (*Martinez*, 2017 IL App (3d) 160514, ¶ 15), we have little difficulty concluding that the trial court erred in granting this portion of defendants' motion to dismiss.

¶ 22    The trial court relied on its finding that there was no "proof that [plaintiff] notified [the Department] of a change of address." We note that the statute at issue here contains no provision conditioning the right to receive notice for the purpose of the running of the limitations period on keeping one's address current with the Department. See 775 ILCS 5/7A-102(D)(4) (West 2012). It is axiomatic that a court may not read into a statute any conditions, limitations, or exceptions

not expressed in its plain language. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23. The failure to keep the Department informed of a current address might be the basis for a discretionary dismissal in certain circumstances. See 56 Ill. Adm. Code 2520.430(c) (2007)) ("A complainant must promptly provide the Department with a notice of any change in address or telephone number or of any prolonged absence from the current address so that he or she can be located. *** If a complainant cannot be located or does not respond to reasonable requests by the Department, the Department *may* dismiss the charge pursuant to Section 2520.560 of this Part." (Emphasis added.)). Here, the department chose not to dismiss the complaint on this basis. Furthermore, nothing in the plain language of section 7A-102(D)(4) of the Act indicates that failing to inform the Department of a change of address would in any way affect the running of the limitations period.

¶ 23    It is important to note here the limitation of our holding. We do not mean to imply that a plaintiff could indefinitely delay dismissal of a case by avoiding receipt of notice. Here, the Department attempted to mail notice to plaintiff, it was returned, and the Department then resent the notice to plaintiff's correct address. This was a brief delay. If this had become an ongoing situation, other remedies were available. As noted, the Department has the discretion to dismiss a charge where a plaintiff fails to keep his or her contact information up to date. *Id.* Moreover, *laches* may be invoked in an administrative proceeding as well. *Christ Hospital & Medical Center v. Human Rights Comm'n*, 271 Ill. App. 3d 133, 137 (1995); *Gonzalez v. Human Rights Comm'n*, 179 Ill. App. 3d 362, 371 (1989).

¶ 24    Defendants raise a number of related arguments that are not on point. For example, defendants assert that the limitations period at issue here is jurisdictional. See, *e.g.*, *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 727-29 (1990). At issue in this case is when the

limitations period began to run; its nature is not at issue. Thus, whether the limitations period is jurisdictional or not, it did not start to run until plaintiff received the amended notice.

¶ 25    Similarly, defendants assert that there is no statutory authority for the Department to issue an amended notice of substantial evidence. However, construing the record in the light most favorable to plaintiff, plaintiff did not receive the original notice, so the one he received shortly after May 6, 2019, was the operative one and there was nothing to amend. Parenthetically, plaintiff avers that he received the original notice at the same time he received the amended notice. Thus, construing the record in plaintiff's favor, the original notice was not received until May 2019 and, accepting defendants' premise that the Department had no authority to issue an amended notice, the limitations period would begin to run when plaintiff received the original notice, which was also in May. In short, we find this argument unpersuasive.

¶ 26    Defendants also cite a number of cases that stand for the proposition that a complaint that is not timely filed in accordance with the Act must be dismissed. For example, defendants cite *Moultrie v. Penn Aluminum International, LLC*, No. 11-cv-500-DRH, 2012 WL 3113914 (S.D. Ill. July 31, 2012). In that case, the court determined that the plaintiff was given timely notice. That is the question at issue here: when plaintiff received notice. Hence, *Moultrie* provides no meaningful guidance here. *Brandenburg v. Earl L. Henderson Trucking, Co.*, No. 09-0558-DRH, 2010 WL 2219603 (S.D. Ill. June 2, 2010), also cited by defendants, is similarly distinguishable.

¶ 27    In conclusion, we hold that the trial court erred in dismissing plaintiff's complaint on the basis that it was untimely.

¶ 28            B. Whether Plaintiff Was Disabled Within the Meaning of the Act

¶ 29    The trial court also ruled that plaintiff was not disabled within the meaning of the Act. This portion of defendants' motion to dismiss implicates section 2-615 of the Code (735 ILCS 5/2-619

(West 2020)). A motion to dismiss pursuant to this section tests the legal sufficiency of the complaint. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. At issue is "whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Id.* "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005).

¶ 30     The Act prohibits discrimination against an employee because of, *inter alia*, a "physical or mental disability." 775 ILCS 5/1-102(A) (West 2012). The Act defines "disability" as follows:

> "[A] determinable physical or mental characteristic of a person, including, but not limited to, a determinable physical characteristic which necessitates the person's use of a guide, hearing or support dog, the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder ***." 775 ILCS 5/1-103(I) (West 2012).

It also requires that the disability be "unrelated to the person's ability to perform the duties of a particular job or position." *Id.* § 1-103(I)(1). An employee who can perform his or her job with a reasonable accommodation is disabled within the meaning of the Act. See *Fox v. Adams & Associates, Inc.*, 2020 IL App (1st) 182470, ¶ 43 ("A plaintiff must have the ability to perform the

duties of the job in question; a plaintiff who cannot, by reason of a physical condition, perform the duties of the job in question even with accommodation is not disabled under the Rights Act.").

¶ 31    Plaintiff "alleged in his Second Amended Complaint that he has a disability, [ectodermal dysplasia hydrosis], that [defendants] had knowledge of his disability, that despite his disability, [plaintiff] had acceptably performed the duties of his job for 6 months, that [defendants] had a practice of allowing other nondisabled employees to leave work early due to illness, injury or other reason, that [plaintiff] would have been able to continue performing his job had he not been fired, and that [defendants] discriminated against him by firing him because of his disability in violation of the Human Rights Act." The trial court determined that plaintiff was not disabled as contemplated by the Act. It noted that, under the Act, the disability must be unrelated to a plaintiff's ability to perform his or her job. It added that working in a warehouse in July is part of plaintiff's job. It found that "extraordinary [*sic*] hot days in July are not uncommon around here or August for that matter." The trial court concluded that plaintiff "can't perform the job if he can't work in July in hot weather."

¶ 32    Plaintiff contends that the trial court failed to construe the allegations in the complaint in the light most favorable to him, as it must do in resolving a section 2-615 motion to dismiss. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Specifically, plaintiff points out that he alleged that he "became overheated due to *unusual extreme Summer temperatures* in the workplace." (Emphasis added.) However, the trial court concluded that such conditions "are not uncommon." Plaintiff further points out that the proposition that conditions were unusually hot can be inferred from the fact that he had been working continuously from January 7, 2013, to July 18, 2013. We agree with plaintiff.

¶ 33    At this stage of the proceedings, the trial court should have accepted plaintiff's allegation that July 18, 2013, was an unusually hot day. Moreover, plaintiff alleged that he requested a reasonable accommodation, namely, being able to go home on that unusually hot day, just as defendants allowed other employees who had become sick or injured to leave work early.

¶ 34    Moreover, even though plaintiff was unable to perform his job under the conditions that existed on July 18, 2013, the question of whether a plaintiff could have performed his or her job with a reasonable accommodation remains open. It is unclear that a reasonable accommodation did not exist here. For example, since this was apparently the first time that plaintiff missed work due to his medical condition, it is entirely possible that simply allowing him to miss work up to the amount of sick time he had accrued would be a sufficient accommodation. See *Illinois Bell Telephone Co. v. Human Rights Comm'n*, 190 Ill. App. 3d 1036, 1050-51 (1989) (holding a transfer to a position with a flexible schedule constituted a reasonable accommodation); see also *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer."). Hence, it is not apparent that plaintiff could not have performed his job if given a reasonable accommodation.

¶ 35    Defendants point out that plaintiff alleged that the job could be "life-threatening" to him. Defendants then call our attention to the following section of the Administrative Code: "a person's condition is related to his/her ability if it would make employment of the person in the particular position demonstrably hazardous to the health or safety of the person or others." 56 Ill. Adm. Code 2500.20(d)(2) (2009). However, defendants fail to acknowledge the following language from the same section: "Reasonable accommodation of a person's physical or mental limitations must be explored, in accordance with Section 2500.40, to determine whether the condition prevents

acceptable or safe performance of the activities necessary to the job." *Id.* Thus, if a reasonable accommodation would allow plaintiff to perform his job safely, he is disabled within the meaning of the Act. See *Harton v. City of Chicago Department of Public Works*, 301 Ill. App. 3d 378, 390 (1998) ("Consequently, a complainant who cannot, by reason of a physical condition, perform the duties of the job in question *even with accommodation* is not handicapped within the meaning of the Act." (Emphasis added.)). As noted above, it is not clear that a reasonable accommodation did not exist for plaintiff.

¶ 36 The mere fact that a job is dangerous without an accommodation does not excuse an employer from offering an accommodation that would make the job safe. Indeed, in *Constant v. Turris Coal Co.*, 199 Ill. App. 3d 214, 221-22 (1990), the court recognized the possibility that a reasonable accommodation could allow a plaintiff to perform a job that otherwise would have been dangerous to him. In that case, the court noted that "to require [the plaintiff] to work in the mine would appear to require him to choose between work which might be very dangerous to him or to give up his job." *Id.* at 221. It then observed, "Considering [the plaintiff's] tenure and his ability to continue to ably perform important work at ground level, we deem the record to raise a 'fair question' of a failure by [the defendant] to make a required accommodation to [plaintiff]." *Id.* Thus, where the reasonable accommodation of allowing the plaintiff to work at ground level rather than in a mine would have made the job safe for the plaintiff, the defendant was required to make the accommodation. *Id.* Hence, in this case, it is inconsequential that plaintiff's job is dangerous to him if it could be made safe through a reasonable accommodation.

¶ 37 Defendants cite *Van Campen v. International Business Machines Corp.*, 326 Ill. App. 3d 963, 972-73 (2001), for the proposition, "that where a plaintiff is not disabled as defined under the Act, 'an employer does not commit a *per se* violation of the Act by failing to investigate the

possibility of an accommodation, even if the employee ultimately could not have performed the job with accommodation.' " *Van Campen* is easily distinguishable. In that case, the plaintiff's alleged disability clearly affected his ability to perform his job. *Id.* at 972. As an accommodation, the plaintiff requested "his own version of flex-time which would enable him to work when his medical conditions allowed, with no fixed schedule." *Id.* The court observed:

> "[The plaintiff] knew that attendance was a condition of his employment and received numerous warnings from several supervisors and a COE letter detailing requirements necessary to retain his position. Despite repeated warnings, [the plaintiff] continued to miss work without a medical excuse, arrived late, and failed to contact his supervisor upon his arrival at work. His performance suffered when he missed client meetings and emergency calls and failed to complete work orders due to his absences. [The plaintiff] demonstrated that he could not perform an important function of his job, conforming to a regular, fixed work schedule and attendance requirements." *Id.*

Here, plaintiff missed part of one day after informing his supervisor of his need to leave for a medical reason. Nothing in this case approaches the extended pattern of absenteeism that allowed the *Van Campen* court to conclude that that plaintiff could not perform his job, making *Van Campen* clearly distinguishable. Moreover, plaintiff alleges that he had successfully performed his job for approximately six months, including half of the summer, which allows an inference that his disability would be unrelated to his job, particularly if he were given a reasonable accommodation.

¶ 38    In sum, we hold that the trial court erred in determining that plaintiff did not adequately plead a disability as contemplated by the Act.

¶ 39                                    IV. CONCLUSION

¶ 40    In light of the foregoing, the order of the court dismissing plaintiff's second amended complaint is reversed. This cause is remanded for further proceedings.

¶ 41    Reversed and remanded.

**No. 2-20-0769**

| | |
|---|---|
| **Cite as:** | *Jackson v. TSA Processing Chicago, Inc.*, 2021 IL App (2d) 200769 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-L-803; the Hon. Robert G. Kleeman, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin J. Kuhn, of Kuhn Firm P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick J. Walsh and Scott Drumheller, of Griffin Williams McMahon & Walsh, LLP, of Geneva, for appellees. |