2024 IL App (1st) 232466-U

No. 1-23-2466

Order filed December 17, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DANIEL CHAPMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 3346 |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION and | ) | Honorable |
| OFFICE OF THE STATE APPELLATE DEFENDER, | ) | Michael J. Evans and |
| | ) | Brian Weinthal, |
| Respondents-Appellees. | ) | Judges, presiding. |

JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*: We reverse the Illinois Human Rights Commission's (1) vacatur of an order deeming facts admitted based on untimely responses to requests to admit and (2) grant of summary decision in favor of the Office of the State Appellate Defender. We affirm the denial of petitioner's motion for summary decision and remand this matter for further proceedings consistent with this order.

¶ 2   Petitioner Daniel Chapman filed a charge with the Illinois Department of Human Rights

(the Department) alleging that the Office of the State Appellate Defender (OSAD) refused to hire

him as an assistant Appellate Defender (AAD) due to his age of 52 years. The Department investigated the charge and filed a complaint on Chapman's behalf with the Illinois Human Rights Commission (Commission). An administrative law judge (ALJ) issued a recommended order granting summary decision in OSAD's favor, which the Commission adopted. On appeal, Chapman argues that the ALJ and the Commission erred by (1) vacating a prior order that deemed certain facts admitted based on OSAD's untimely responses to requests to admit and (2) granting summary decision in OSAD's favor. For the following reasons, we reverse both rulings. Chapman also requests that we grant his cross-motion for summary decision, which the ALJ denied. We affirm the denial of Chapman's motion for summary decision, and we remand this matter for further proceedings consistent with this order.

¶ 3                                    I. BACKGROUND

¶ 4                                   A. Initial Pleadings

¶ 5     On February 16, 2017, Chapman filed a charge with the Department alleging that OSAD refused to hire him because of his age. OSAD responded that OSAD's "hiring committee determined [Chapman] would not be a good fit for the position of [AAD] because of his lack of passion for criminal defense work, his lack of relevant appellate brief writing experience, his harsh critique of [OSAD], his arrogant demeanor, and the overall results of the writing exercise." The Department investigated the charge and issued a finding of substantial evidence.

¶ 6     The Department then filed a complaint with the Commission on Chapman's behalf. The complaint alleged that Chapman applied for an AAD position on December 6, 2016. Patricia Mysza, Shawn O'Toole, and Jessica Ware comprised OSAD's hiring committee and interviewed Chapman on January 10, 2017. Chapman alleged that although he was qualified for the position,

OSAD did not hire him and instead hired candidates under age 40 with less experience and lesser qualifications. Chapman also alleged that OSAD's stated reasons for not hiring him were pretexts for discriminating against him based on his age.

¶ 7                                    B. Requests to Admit

¶ 8      The Illinois Administrative Code allows a party to issue requests to admit facts. 56 Ill. Adm. Code 5300.745(a) (1992). Facts are deemed admitted if the opposing party does not respond within 28 days by either denying the requests for admissions or objecting to them as improper. 56 Ill. Adm. Code 5300.745(c) (1992). On February 4, 2019, Chapman served requests to admit on OSAD. Relevant here are requests 14, 15, and 16:

> "14. Admit that Patricia Mysza gave [Chapman's] Writing Exercise an artificially low score after learning that it was written by [Chapman] or after learning that [Chapman] had alleged age discrimination by OSAD."

> "15. Admit that Jessica Ware gave [Chapman's] Writing Exercise an artificially low score after learning that it was written by [Chapman] or after learning that [Chapman] had alleged age discrimination by OSAD."

> "16. Admit that Patricia Mysza and Jessica Ware discussed, or otherwise communicated about, giving [Chapman's] Writing Exercise an artificially low score."

¶ 9      As of May 23, 2019, OSAD had not responded to the requests to admit, so ALJ Evans granted Chapman leave to file a motion to deem the requests admitted.[1] OSAD responded to the

---

[1]ALJ Michael J. Evans presided over this case until his retirement. ALJ Brian Weinthal presided thereafter. We refer to the ALJs by name to distinguish who entered which orders, particularly because the ALJs reached different conclusions as to the requests to admit that Chapman served on OSAD.

requests to admit in mid-June 2019 and denied requests 14, 15, and 16.[2] On July 15, 2019, Chapman filed a motion to deem facts admitted. ALJ Evans granted the motion on July 18, 2019. OSAD filed a motion to reconsider, arguing that (1) it did not have an opportunity to respond to the motion in writing, (2) OSAD "substantially complied" because it provided responses timely enough such that Chapman was not prejudiced, and (3) requests 14, 15, and 16 improperly sought legal conclusions, not admissions of fact. ALJ Evans denied OSAD's motion to reconsider. He concluded that OSAD (1) did not request an opportunity to respond to the motion, (2) did not "substantially comply" with the requests to admit; rather, it provided clearly overdue responses, and (3) failed to identify any requests that sought legal conclusions.

¶ 10    In resolving the parties' cross-motions for summary decision, ALJ Weinthal vacated ALJ Evans's order deeming facts admitted. ALJ Weinthal concluded that "the phrasing of Requests for Admission No. 14 and 15 is largely indistinguishable from the conclusion that Mysza and Ware acted with a generally improper motive or animus towards [Chapman] when grading his written work, which is a question of law." Additionally, although neither party raised request 16, ALJ Weinthal vacated its admission as well because Chapman "ha[d] no evidence showing that Mysza and Ware ever participated in such a conversation, and both witnesses deny any collusive discussions."

¶ 11                              C. Summary Decision

¶ 12    The parties filed cross-motions for summary decision. OSAD's motion contended that Chapman could not prevail on his age discrimination claim because (1) there was no evidence the

---

[2]The certificate of service for OSAD's responses states that they were served on June 17, 2019, but the envelope in which they were mailed has a postmark of June 20, 2019.

hiring committee members knew or considered his age, (2) his interview revealed his arrogant demeanor, disdain for OSAD, and resistance to supervision, and (3) most of the hiring committee members gave poor grades to his writing exercise. In response, Chapman argued that the hiring committee members were in fact aware of his age. He also disputed the hiring committee members' accounts of his interview and whether Mysza and Ware graded his writing exercise fairly. Chapman maintained that O'Toole gave his writing exercise a high score and that Chapman was more experienced than almost every candidate OSAD hired.

¶ 13    Chapman's motion for summary decision contended that he established OSAD's liability for age discrimination because (1) his resume reflected qualifications superior to several candidates OSAD hired, (2) his interview score was better than or equal to several candidates OSAD hired, (3) his writing exercise score was higher than any candidate OSAD hired, and (4) Mysza's claims about why OSAD did not hire Chapman were false.

¶ 14    The parties' exhibits in support of summary decision briefing include affidavits from Mysza, O'Toole, Ware, and Chapman, application materials from the candidates OSAD hired, and the hiring committee members' notes from the candidate evaluation process.[3] We set out the facts of this case based on those exhibits.

¶ 15                                  1. OSAD

¶ 16    OSAD represents indigent clients in criminal appeals. Mysza was the Deputy Defender for the First District appellate court in 2016 and 2017 and was 60 years old at the time. O'Toole was an assistant Deputy Defender and was 39 years old. Ware was an AAD and was 36 years old.

---

[3]Although the Administrative Code allows parties to take depositions (56 Ill. Adm. Code 5300.720(a)(3) (2022)), neither party submitted depositions in support of or in opposition to summary decision briefing.

¶ 17 In late 2016, OSAD posted an opening for an AAD position. The position involved "reading records, conducting research, drafting briefs and other documents and presenting oral arguments." The job posting stated that "[c]andidates should have graduated from an ABA-accredited law school and be licensed in Illinois or be able to obtain an Illinois license." The version of the posting that "went to free advertising for public sector jobs" stated "Experience: Lateral 3+ years." OSAD received approximately 100 applications for the position.

¶ 18                    2. Chapman's Application and Evaluation Process

¶ 19 On December 6, 2016, Chapman sent OSAD a cover letter and his resume to apply for the AAD position. Chapman's resume indicates that he received his undergraduate degree from Claremont McKenna College in 1988 and his *juris doctor* from Northwestern University School of Law in 2008. His cover letter describes law as "a second career." Chapman served as a judicial law clerk in the Illinois Appellate Court, Fourth District from 2009 to 2010. From 2011 to the time of his application in December 2016, Chapman was a solo practitioner "primarily devoted to civil appeals in Illinois state courts." Chapman's cover letter explained that he was dissatisfied with his solo practice because he "assist[ed] trial attorneys with brief writing and appellate procedure behind the scenes" but did not engage in "actual advocacy." It also stated that "[c]riminal cases were the most interesting part of [his] clerkship" and he missed working on them.

¶ 20 Chapman was one of 32 candidates Mysza selected to interview for the AAD position. Mysza, O'Toole, and Ware interviewed Chapman on January 10, 2017. All three hiring committee members attest that they did not know Chapman's age at any point during the evaluation process.

¶ 21 Mysza's affidavit states that, during his interview, Chapman said that his interest in criminal law arose from watching *Law & Order* with his girlfriend. He stated that his solo practice

did not involve reading trial records, conducting research, or writing briefs; rather, he edited briefs written by other attorneys in civil appeals. Chapman recounted an OSAD brief he reviewed while clerking in the Fourth District that argued for the incorrect standard of review. He also described a disagreement with a supervisor in which he believed he was right and the supervisor was wrong. Mysza concluded that Chapman was "critical of OSAD, appeared arrogant and would be difficult to supervise, and he did not seem to be interested in criminal law."

¶ 22    O'Toole attests that Chapman said he wanted to practice criminal law because he enjoyed watching *Law & Order* with his girlfriend. Chapman criticized OSAD for not raising meritorious issues on appeal. He claimed that Fourth District justices adopted his draft opinions and orders "verbatim." O'Toole concluded that Chapman "would have difficulty working in an environment in which work was edited and in which he would report to a supervisor." O'Toole felt that Chapman "appeared to lack interest in criminal defense work and did not have a passion for criminal law."

¶ 23    Ware attests that Chapman "did not say anything to suggest that he was passionate about [criminal law] or was criminally defense minded." Chapman criticized OSAD for not raising meritorious issues on appeal. When the hiring committee explained that AADs were expected to file two briefs a month, Chapman responded, "[Y]ou don't file 2 briefs a month." Ware concluded that Chapman "believed OSAD raised frivolous issues on appeal, and that the work of OSAD was beneath him." Although she found Chapman interesting, "his critiques of [OSAD] were harsh and he may not welcome or assimilate well to the supervisory structure of OSAD."

¶ 24    Chapman's affidavit describes his interview differently. He denies saying he was interested in criminal law because he enjoyed watching *Law & Order* with his girlfriend. Chapman attests

that he has not owned a television since 2008 and has never seen *Law & Order*. Chapman explained to the hiring committee that he could not discuss criminal cases he worked on in the Fourth District due to a confidentiality agreement. Chapman denies that he criticized OSAD during his interview. Rather, he answered a question from O'Toole about why the Fourth District stopped accepting requests for oral argument from a certain OSAD contractor and explained that the contractor had argued for the incorrect standard of review on prior occasions. Chapman told the hiring committee he would welcome supervision. He related a story from his time clerking at the Fourth District in which he followed a supervisor's instructions despite disagreeing with them to illustrate his willingness to be supervised. Chapman denies he said that Fourth District justices used his drafts verbatim. Rather, he told the hiring committee that on *one* occasion, a Fourth District justice adopted his draft verbatim, but on all other occasions, justices or other law clerks edited his drafts. He also denies saying, "[Y]ou don't file 2 briefs a month," and attests that he does not know how many briefs per month OSAD expects AADs to file.

¶ 25    Chapman's girlfriend, Lisa Perez, attests that Chapman has not owned a television since they began dating in 2010. He hardly ever watches television and has never watched *Law & Order* with her.

¶ 26    The committee members' handwritten notes from Chapman's interview are included in the record. Mysza's notes are mostly illegible. O'Toole noted that Chapman "claim[ed] his drafts were used verbatim" in the Fourth District and gave a "harsh assessment of OSAD briefs." O'Toole also noted that Chapman "would welcome supervision." Ware's notes describe Chapman as an "older 40-50 something white guy [with] gray hair," and as an "interesting guy" who was "set in his

ways." Ware noted that Chapman "knows a lot about our office [and] our work" but was "not crim[inal] defense minded." She also wrote "you guys don't file 2 briefs a month."

¶ 27    After candidates completed their interviews, they completed a writing exercise that involved drafting a portion of an appellate brief in a mock criminal case. Chapman submitted his writing exercise on January 14, 2017. The hiring committee reviewed and graded writing exercises without knowing who wrote them. Mysza gave Chapman's writing exercise a grade of C-. O'Toole assigned a score of 30 out of 32. Ware assigned a grade of B-.

¶ 28    On January 27, 2017, Mysza sent Chapman an email informing him that OSAD was "unable to offer [him] a position" as an AAD. The email did not provide a reason for this decision. Mysza, O'Toole, and Ware attest that they never discussed Chapman's age and that his age played no role in the decision not to hire him.

¶ 29                                    3. Hired Candidates

¶ 30    OSAD ultimately hired 12 candidates as AADs.[4] Seven candidates were hired immediately following the evaluation process. Five were initially waitlisted but later accepted AAD positions. All candidates OASD hired were under age 40.

¶ 31    Adrienne Barnabee graduated from law school in 2016 and worked as a legislative liaison for the Illinois Environmental Protection Agency. John Breffeilh graduated from law school in 2010; he then worked as a staff attorney at the Louisiana Second Circuit Court of Appeals and as

[4]The position statement OSAD submitted to the Department clearly states that OSAD hired 12 individuals for this position. An OSAD personnel roster attached to the position statement confirms that all 12 individuals are employed as AADs. However, the parties' filings frequently reference OSAD hiring only nine individuals for this position. We cannot determine why. We will proceed with the understanding that OSAD hired 12 individuals as AADs. Whether OSAD hired 12 individuals or 9 is one of the many factual issues that preclude summary decision in this case.

a public defender in Milwaukee. Eric Castañeda graduated from law school in 2015 and worked as a staff attorney for a judge at the circuit court of Cook County. Elizabeth Cook graduated from law school in 2006 and clerked for the Seventh Circuit until 2008. Thereafter, she was an associate at Winston & Strawn for approximately a year, and then worked as an AAD from 2009 to 2014, when she became a stay-at-home mother. Manuela Hernandez graduated from law school in 2005. She worked as a criminal defense staff attorney for a legal aid provider in Brooklyn from 2005 to 2011, as an assistant Attorney General in Illinois from 2013 to 2016, and as a *pro bono* program director for Catholic Charities at the time of her application. Jeremy Lemmons graduated from law school in 2015 and prosecuted traffic cases for the City of Chicago. Richard Connor Morley graduated from law school in 2016 and worked in private criminal defense practice. Talon Nouri graduated from law school in 2012 and worked as counsel to Illinois Senate President John Cullerton. Ashlee Patterson graduated from law school in 2016 and was seeking her first job as an attorney. Jonathan Pilsner graduated from law school in 2014 and was an associate in a private criminal defense practice. Miriam Sierig graduated from law school in 2002 and worked in fundraising for a neighborhood organization in Chicago. She was an AAD from 2003 to 2012 and was in private civil practice from 2012 to 2014. Drew Wallenstein graduated from law school in 2014 and was an associate in private civil practice.

¶ 32    Chapman's interview scores compared to these candidates as follows:[5]

---

[5]With one exception, grades and scores for Cook, Sierig, and Wallenstein do not appear in the record. According to OSAD's responses to the requests to admit, O'Toole scored interviews on a 20-point scale and writing exercises on a 32-point scale. Ware did not assign scores or grades to interviews. How to interpret and compare OSAD's non-uniform and apparently incomplete scoring and grading systems presents yet another factual issue that precludes summary decision in this case.

| **Mysza** | | **O'Toole** | |
|---|---|---|---|
| Hernandez | A | Breffeilh | 18 |
| Morley | A | Pilsner | 17 |
| Nouri | A | Morley | 16 |
| Patterson | A | Patterson | 16 |
| Pilsner | A | Hernandez | 15 |
| Lemmons | B+ | Lemmons | 15 |
| Castañeda | C | Castañeda | 14 |
| Breffeilh | C- | **Chapman** | **14** |
| **Chapman** | **C-** | Nouri | 14 |
| | | Barnabee | 12 |

¶ 33    Chapman's writing exercise scores compared to the hired candidates as follows:

| **Mysza** | | **O'Toole** | | **Ware** | |
|---|---|---|---|---|---|
| Patterson | A | **Chapman** | **30** | Castañeda | A+ |
| Wallenstein | A- | Nouri | 29 | Barnabee | A |
| Nouri | B+ | Patterson | 27 | Lemmons | A |
| Castañeda | B+ | Pilsner | 24 | Morley | A |
| Pilsner | B+ | Breffeilh | 23 | Pilsner | A |
| Barnabee | B | Morley | 23 | Hernandez | A- |
| Lemmons | C+ | Hernandez | 21 | Nouri | A- |
| Morley | C+ | Lemmons | 21 | Breffeilh | B |
| Hernandez | C | Barnabee | 19 | Patterson | B |
| Breffeilh | C- | Castañeda | 16 | **Chapman** | **B-** |
| **Chapman** | **C-** | | | | |

¶ 34                                D. Summary Decision Ruling

¶ 35    ALJ Weinthal granted OSAD's motion for summary decision and denied Chapman's motion for summary decision. ALJ Weinthal concluded that Chapman was not qualified for the AAD position because (1) his longer time in practice than most of the candidates was his experience, not his qualification for the position, (2) he performed poorly in the interview, and (3) his writing exercise was "[m]ediocre." In addition, ALJ Weinthal found that there was no evidence

Chapman's age played any role in OSAD's hiring decision. The Commission adopted ALJ Weinthal's ruling, and Chapman timely appealed.

¶ 36                                    II. ANALYSIS

¶ 37     On appeal, Chapman argues that ALJ Weinthal erred by vacating OSAD's admissions to requests 14, 15, and 16, and by granting OSAD's motion for summary decision. Chapman requests that we reverse both rulings and grant his motion for summary decision instead.

¶ 38                              A. Requests to Admit

¶ 39     Chapman first contends that ALJ Weinthal erred in vacating ALJ Evans's order deeming requests 14, 15, and 16 admitted because there was no motion to vacate before ALJ Weinthal and requests 14, 15, and 16 did not seek legal conclusions.

¶ 40     First, we consider whether ALJ Evans's order deeming facts admitted was proper. Requests to admit not answered within 28 days are deemed admitted. 56 Ill. Adm. Code 5300.745(c) (1992). Chapman issued the requests to admit on February 4, 2019, so OSAD's responses were originally due on March 4, 2019. ALJ Evans extended the deadline for OSAD's responses to May 23, 2019, as permitted under the Administrative Code. See 56 Ill. Adm. Code 5300.720(c) (2022). However, OSAD did not serve responses until mid-June 2019, almost a month after the deadline. Therefore, ALJ Evans properly deemed facts admitted based on OSAD's untimely responses.

¶ 41     We now consider whether ALJ Weinthal correctly concluded that requests 14 and 15 were improper because they sought legal conclusions. If requests 14 and 15 sought legal conclusions, they were improper. See *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 242 (1998). In that case, they could not be deemed admitted regardless of whether OSAD timely responded to them. See *Babcock v. Martinez*, 368 Ill. App. 3d 130, 141-42 (2006) (a party cannot admit legal

conclusions by failing to timely respond to requests that seek such conclusions). Neither party provides the standard of review for this issue. It is *de novo*. *P.R.S. International*, 184 Ill. 2d at 234 (whether a request to admit calls for an admission of fact or a legal conclusion is reviewed *de novo*.).

¶ 42    Requests 14 and 15 sought admissions that Mysza and Ware gave Chapman's writing exercise "artificially low score[s]." "Artificial" means "not being, showing, or resembling sincere *** behavior;" "fake," "imitation," or "sham." Merriam-Webster's Collegiate Dictionary (10th ed. 1995). That describes pretext because "pretext" and "sham" are synonymous in employment discrimination cases. See *Chicago Housing Authority v. Human Rights Commission*, 325 Ill. App. 3d 1115, 1123 (2001). Pretext is central to this age discrimination case because Chapman must prove that OSAD's stated reasons for not hiring him were pretexts for age discrimination. See *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 26.

¶ 43    "The issue of whether the defendant's stated reason is a pretext is a question of fact." *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 46; see also *Zaderaka v. Illinois Human Rights Commission*, 131 Ill. 2d 172, 180 (1989) ("Our appellate court has held, and we agree, that whether an employer's articulated reason is pretextual is a question of fact."). Therefore, requests 14 and 15 sought admissions of fact, not legal conclusions. Just because requests 14 and 15 might *lead to* legal conclusions did not make them improper. See *P.R.S. International*, 184 Ill. 2d at 236. We note that OSAD's responses to requests 14 and 15 did not object to them as seeking legal conclusions even though OSAD could have raised that objection. See 56 Ill. Adm. Code 5300.745(c) (1992) (a responding party may object to a request to admit as

"improper in whole or in part."). Requests 14 and 15 were proper and OSAD did not timely respond to them; therefore, OSAD admitted the facts those requests sought. See *id.*

¶ 44    OSAD argues that "[b]ecause Chapman's *** requests for admission implied that OSAD acted with a discriminatory motive, they improperly sought to elicit legal conclusions." OSAD cites no authority in support of this claim. OSAD is incorrect. An employer's motive is a question of fact. *Grchan v. Illinois State Labor Relations Board*, 315 Ill. App. 3d 459, 467 (2000). As such, requests for admissions about an employer's "motives and intent" are proper. *U.S. v. Board of Education of the Consolidated High School District 230, Palos Hills, Illinois*, No. 88 C 3113, 1990 WL 56148, *3 (N.D. Ill. Jan. 11, 1990).[6]

¶ 45    ALJ Weinthal also vacated OSAD's admission of request 16 because OSAD denied it and Chapman presented no corroborating evidence that Mysza and Ware discussed giving his writing exercise artificially low scores. ALJ Weinthal cited no legal authority supporting this conclusion, and we have found none. What witnesses did or did not discuss is a question of fact. Accordingly, we reverse ALJ Weinthal's vacatur of ALJ's Evans's order deeming facts admitted. We will treat these facts as admitted in addressing the substance of Chapman's age discrimination claim in the next section.

¶ 46                            B. Motion for Summary Decision

¶ 47    Chapman argues that ALJ Weinthal erred in granting OSAD's motion for summary decision because Chapman established a *prima facie* case of age discrimination and there is a

_____

[6]Federal decisions are not binding on state courts, but we can consider them as persuasive authority. *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 43 n. 5. Federal decisions can be particularly helpful in the employment discrimination context because our supreme court has adopted the employment discrimination analysis originally developed by federal courts. See *Zaderaka*, 131 Ill. 2d at 178-79 (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)).

genuine issue of material fact as to whether OSAD's stated reasons for not hiring him were pretextual.

¶ 48 Summary decision is the administrative version of summary judgment under section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)). *Cano v. Village of Dolton*, 250 Ill. App. 3d 130, 138 (1993). Section 8-106.1 of the Illinois Human Rights Act (the Act) provides that the hearing officer shall grant a motion for summary decision if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a recommended order as a matter of law. 775 ILCS 5/8-106.1(2) (West 2016).

¶ 49 The principles of summary judgment apply to summary decisions. *Cano*, 250 Ill. App. 3d at 138. The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Home Star Bank and Financial Services v. Emergency Care and Health Organization, Ltd.*, 2012 IL App (1st) 112321, ¶ 26. Even if facts are undisputed, summary judgment is not warranted if reasonable people could draw different inferences from those facts. *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 607 (2009). A court reviewing a motion for summary judgment may not make credibility determinations or weigh the evidence. *Gulino v. Economy Fire and Casualty Co.*, 2012 IL App (1st) 102429, ¶ 25. Rather, the court must construe the record strictly against the movant and in the light most favorable to the nonmovant. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9. *De novo* review applies to a grant of summary decision. *Sola v. Illinois Human Rights Commission*, 316 Ill. App. 3d 528, 536 (2000); *Tate v. American General Life and Accident Insurance Co.*, 274 Ill. App. 3d 769, 775 (1995). *De novo* review means that we perform the same analysis as the ALJ who resolved the motions for summary decision.

See *Platinum Partners Value Arbitrage Fund, Limited Partnership v. Chicago Board Options Exchange*, 2018 IL App (1st) 171316, ¶ 41.

¶ 50      The Act provides that it is a civil rights violation for an employer to refuse to hire an applicant based on unlawful discrimination, including age discrimination. 775 ILCS 5/1-102, 2-102(A) (West 2016); *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 916 (2010). We apply a three-step test to determine whether an employer engaged in unlawful discrimination. *Kreczko*, 2016 IL App (1st) 151762, ¶ 26 (citing *Zaderaka*, 131 Ill. 2d at 178-79). First, the petitioner must establish a *prima facie* case of unlawful discrimination. *Id.* If the petitioner does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision not to hire the petitioner. *Id.* If the employer articulates a nondiscriminatory reason, the petitioner must prove by a preponderance of the evidence that the reason was a pretext for unlawful discrimination. *Id.*

¶ 51                                      1. *Prima Facie* Case

¶ 52      To establish a *prima facie* case of age discrimination in hiring, a petitioner must show that (1) he is a member of a protected class, (2) he applied and was qualified for the position, (3) he was not hired, and (4) the position "was filled by younger persons of equal or lesser qualification." *Cano*, 250 Ill. App. 3d at 137; *C.R.M. v. Chief Legal Counsel of Illinois Department of Human Rights*, 372 Ill. App. 3d 730, 733 (2007). The burden of establishing a *prima facie* case of discrimination is not onerous. *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 40. "The plaintiff's evidence on the *prima facie* case need not be overwhelming or even destined to prevail; rather, the plaintiff need only present some evidence from which one can infer that the employer"

discriminated against him. (Internal quotation marks omitted.) *Bellaver v. Quanex Corp.*, 200 F. 3d 485, 493 (7th Cir. 2000).

¶ 53    There is no dispute that Chapman was a member of a protected class because he was over age 40 at all relevant times. See *Burns v. Bombela-Tobias*, 2020 IL App (1st) 182309, ¶ 59. There is also no dispute that Chapman applied for the AAD position and OSAD did not hire him. The remaining elements of the *prima facie* case are whether Chapman was qualified for the AAD position and whether OSAD hired younger individuals of equal or lesser qualification.

¶ 54                                    a. Chapman's Qualifications

¶ 55    The job posting to which Chapman applied listed three requirements: a degree from an ABA-accredited law school, licensure or the ability to become licensed in Illinois, and three or more years of legal experience. Chapman graduated from Northwestern University School of Law in 2008, has worked as an attorney in Illinois since 2009, and was practicing law in Illinois at the time of his application in December 2016. Therefore, by the terms of OSAD's job posting, Chapman was qualified for the position. OSAD's brief concedes that Chapman met the requirements listed in the job posting, albeit "minimally" so.

¶ 56    Nevertheless, OSAD contends that Chapman was not qualified because the evaluation process revealed shortcomings beyond the "bare minimum" qualifications listed in the job posting. The hiring committee members attest that Chapman's interview demonstrated that he was resistant to being supervised, had a negative view of OSAD, and lacked genuine passion for criminal defense. Mysza and Ware also claim they found Chapman's legal writing skills unimpressive. However, OSAD's evidence contradicting Chapman's evidence is not relevant at this stage. The *prima facie* case analysis asks only whether the party with the burden of proof has produced

enough evidence to support his case, ignoring contrary evidence. *People v. Relwani*, 2019 IL 123385, ¶ 18; *Courier v. Industrial Commission*, 282 Ill. App. 3d 1, 6 (1996).

¶ 57    To the extent OSAD argues that Chapman did not meet "subjective qualifications"—for example, having a successful interview or showing a passion for criminal defense work—we will not consider those issues just yet. An employer certainly may consider subjective qualifications, but subjective qualifications are assessed at the later stages of the three-step test for employment discrimination. For example, in *Lalvani v. Illinois Human Rights Commission*, 324 Ill. App. 3d 774 (2001), the job description identified an "[a]bility to establish and maintain effective professional relationships" as "one of the desirable work traits." *Id.* at 792 n. 4. This court considered the petitioner's history of poor interpersonal relations at the second step analysis regarding whether the employer had a legitimate, nondiscriminatory reason for not promoting the petitioner. *Id.* at 792. The court did *not* consider the employer's subjective criteria as part of the *prima facie* case analysis.[7] *Id.* at 791. We will take the same approach. Accordingly, we find that Chapman has *prima facie* established that he was qualified for the AAD position because he met the requirements OSAD set forth in the job posting.

¶ 58                    b. Comparison with Other Candidates

¶ 59    We next consider whether Chapman has established the fourth element of his *prima facie* case. In a failure-to-hire case alleging age discrimination, the fourth element of the *prima facie* case requires a showing that the position "was filled by younger persons of equal or lesser

---

[7]The Seventh Circuit has also held that a plaintiff is not required to prove his subjective qualifications as part of a *prima facie* case of employment discrimination. *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 134-36 (7th Cir. 1985). An applicant's poor performance in an interview is relevant to whether the employer had a legitimate, nondiscriminatory reason for not hiring the applicant. *Marnocha v. St. Vincent Hospital and Health Care Center*, 986 F. 3d 711, 721 (7th Cir. 2021).

qualification." *Cano*, 250 Ill. App. 3d at 137. Federal courts have also described the fourth element as a showing that "the position was filled by a person not in the protected class who had similar or lesser qualifications than Plaintiff." *Aberman v. Board of Education of City of Chicago*, 242 F. Supp. 3d 672, 693 (N.D. Ill. 2017) (citing *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010)).

¶ 60     OSAD hired 12 candidates for the AAD position, all of whom were under age 40 and, therefore, more than 12 years younger than Chapman. The question is whether Chapman has made a *prima facie* showing that OSAD hired candidates of equal or lesser qualification compared to him.

¶ 61     We find at least four candidates who meet that description: Barnabee, Breffeilh, Castañeda, and Nouri.[8] The resumes establish that all four candidates had practiced law for a shorter time than Chapman. Additionally, Barnabee, Castañeda, and Nouri had no experience in appellate practice, in contrast to Chapman's background as a law clerk in the Fourth District. Although Breffeilh had worked as an appellate staff attorney, that was for approximately 6 months in Louisiana compared to Chapman's clerkship for approximately 18 months in Illinois. From 2011 to 2016, Breffeilh was a public defender in Wisconsin while Chapman worked on civil appellate briefs in Illinois. A reasonable person could conclude that, based on their backgrounds and experience, Breffeilh was roughly as qualified as Chapman, and Barnabee, Castañeda, and Nouri were less qualified than Chapman.

¶ 62     O'Toole's scores support a similar conclusion. O'Toole assigned a score of 14 to Chapman, Castañeda, and Nouri's interviews. Barnabee's score of 12 was lower. O'Toole also gave

---

[8]Nothing in this order is meant to impugn the individuals OSAD hired. We are simply performing the comparison analysis that employment discrimination case law requires.

Chapman's writing exercise a score of 30, higher than any candidate OSAD hired. So, the one hiring committee member who did not artificially lower Chapman's writing exercise score found him to be the best legal writer of the candidates and an acceptable (if unspectacular) interviewer. Based on total scores from O'Toole, Chapman (44) was more qualified than Nouri (43), Breffeilh (41), Barnabee (31), and Castañeda (30).

¶ 63 Even Mysza's grades support the conclusion that Chapman and Breffeilh were equally qualified. Mysza gave both men's interviews and writing exercise grades of C-. Mysza's admission to "artificially" lowering Chapman's writing exercise grade suggests she actually found Chapman to be *more* qualified than Breffeilh. The documentary evidence before us would allow a reasonable person to conclude that OSAD hired younger candidates who were as qualified as or less qualified than Chapman, and that is enough to establish the fourth element of Chapman's *prima facie* case. See *Bellaver*, 200 F. 3d at 493.

¶ 64 OSAD cites *Reinebold v. Bruce*, 18 F. 4th 922 (7th Cir. 2021) to argue that a "candidate who outperforms a discrimination plaintiff during the evaluation process is not similarly situated so as to be a comparator." That may be, but we are not comparing Chapman to candidates who outperformed him in interviews or the writing exercise. We are comparing Chapman to candidates who performed *as well as or worse than him* according to OSAD's own grades and scores. While *Reinebold* might eliminate as comparators the candidates who performed better in interviews than Chapman, it does not eliminate Barnabee, Breffeilh, Castañeda, or Nouri.

¶ 65 *Reinebold* is distinguishable in any event. In that case, the plaintiff claiming age discrimination in hiring identified only one comparator, a younger candidate who was hired for a college baseball coaching position. *Id.* at 926. The plaintiff performed poorly in a telephone

interview and the younger candidate performed well. *Id.* The Seventh Circuit found that, based on the disparity in phone interview performance, the plaintiff and the younger candidate were not similarly situated. *Id.* By contrast, in this case, there is evidence that four younger candidates whom OSAD hired performed as well as or worse than Chapman in interviews. We also note that *Reinebold* did not involve anything like the writing exercise in this case, at which Chapman excelled according to O'Toole. Accordingly, we find that Chapman has presented a *prima facie* case of age discrimination.

¶ 66                                2. Nondiscriminatory Reason

¶ 67    Because Chapman has established a *prima facie* case of age discrimination, the burden now shifts to OSAD to articulate, not prove, a legitimate and nondiscriminatory reason for not hiring Chapman. See *Zaderaka*, 131 Ill. 2d at 179. OSAD maintains that it did not hire Chapman based on "his resume, interview, and writing exercise." Specifically, the hiring committee determined that Chapman "would not be a good fit for the position of [AAD] because of his lack of passion for criminal defense work, his lack of relevant appellate brief writing experience, his harsh critique of [OSAD], his arrogant demeanor, and the overall results of the writing exercise." These reasons are legitimate and nondiscriminatory. See, *e.g.*, *Barnes v. Board of Trustees of University of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) (choosing one candidate over another based on interview performance is legitimate and nondiscriminatory). Accordingly, we find that OSAD has fulfilled its portion of the three-step test.

¶ 68                                3. Pretext

¶ 69    The burden now shifts back to Chapman to establish that OSAD's stated reasons for not hiring him were pretexts for age discrimination. See *Zaderaka*, 131 Ill. 2d at 179. "Pretext involves

more than just faulty reasoning or mistaken judgment on the part of the employer. Rather, a pretext is a phony reason for some action." (Internal quotation marks and citation omitted.) *Thai*, 2020 IL App (1st) 192408, ¶ 46. A dispute of material fact as to whether the employer's proffered reason is pretextual precludes summary decision in the employer's favor. *Ponder v. County of Winnebago*, 702 F. Supp. 3d 709, 720 (N.D. Ill. 2023) (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)). A petitioner can raise an inference of pretext sufficient to defeat summary judgment by showing that the employer's stated reason is implausible or contradictory. *Thai*, 2020 IL App (1st) 192408, ¶ 46.

¶ 70    We find that several disputes of material fact preclude summary decision. First, there is a dispute as to whether the hiring committee members knew or considered Chapman's age. Ware's notes from Chapman's interview describe him as an "older 40-50 something white guy [with] gray hair." This note contradicts Ware's attestation that "[d]uring Mr. Chapman's interview, [she] was not aware of Mr. Chapman's age."[9] Age-related remarks such as these are probative of whether OSAD engaged in age discrimination. See *Sola*, 316 Ill. App. 3d at 542.

¶ 71    The committee members deny that they shared interview notes with each other. Even accepting that as true, and even if Ware never mentioned that she thought Chapman was 40 to 50 years old, Mysza and O'Toole could have reached the same conclusion independently. Chapman's resume states that he graduated from college in 1988. If he was in his early 20s then, he would be in his early 50s in late 2016. Comparing Chapman's resume to the other candidates' resumes would reveal that he graduated from college at least 9, and as many as 25 years, before any other

---

[9]ALJ Weinthal excused this note as "Ware's exuberance and naïveté in dutifully populating the 'Description space' on her Attorney Interview Forms." It is not the role of a court reviewing a motion for summary decision to explain away or minimize bad evidence for the movant. Rather, the court must view the evidence in the light most favorable to the nonmovant. *Gillespie*, 2020 IL 125262, ¶ 9.

candidate, suggesting that he was significantly older than the other candidates. Additionally, Chapman's cover letter described law as a "second career" for him. From this evidence, a reasonable fact finder could conclude that OSAD likely was aware Chapman was over 40 and older than the other candidates, contrary to the hiring committee members' claim that they did not know how old Chapman was.

¶ 72 There are numerous disputes about what happened during Chapman's interview. In some respects, the parties give completely opposite accounts of the interview. For example, Mysza and O'Toole claim that Chapman said his interest in criminal law arose from watching *Law & Order*. Chapman denies he said that and denies he has ever watched *Law & Order*. Perez, his girlfriend, says the same. We also note that Chapman's cover letter stated that he missed working on criminal cases, which "were the most interesting aspect of [his] clerkship, sometimes evoking [his] sense of moral outrage at a perceived miscarriage of justice." Determining whether Chapman conveyed genuine interest in criminal practice is entirely a credibility contest.

¶ 73 There are also disputes about whether Chapman demonstrated willingness to be supervised. Chapman attests that he told the committee he "would welcome *** supervision" and related a story demonstrating that he would follow a supervisor's instructions even if he disagreed with them. By contrast, Mysza recalls that story as describing a disagreement in which Chapman's former supervisor was wrong and Chapman was proven right. O'Toole claims that Chapman said that Fourth District justices "regularly used" his draft orders and opinions "verbatim." But Chapman attests that he said that *on one occasion*, a Fourth District justice adopted his draft "essentially verbatim," and that "on all other occasions *** [his] written work product was always edited by justices and/or other law clerks." Ware claims that when the interviewers told him AADs

were expected to file two briefs a month, Chapman responded, "[Y]ou don't file two briefs a month." Chapman denies making such a statement and attests that he did not know how many briefs per month OSAD filed.

¶ 74    Additionally, there are disputes about whether Chapman criticized OSAD during his interview. Mysza claims that Chapman described an OSAD brief that argued for the incorrect standard of review, which he reviewed while clerking in the Fourth District, and O'Toole and Ware claims that Chapman said OSAD did not raise meritorious issues. Chapman denies that he criticized OSAD. He attests that he explained that the Fourth District had stopped granting oral arguments to an OSAD *contractor* based on prior arguments asserting the wrong standard of review. Chapman acknowledged that "few convictions were reversed on appeal," but did not criticize OSAD's effectiveness.

¶ 75    Furthermore, Mysza claims that Chapman "could not provide any description of a criminal case he worked on" in the Fourth District, implying he did not actually work on any criminal cases as a law clerk. But Chapman attests that he explained that a confidentiality agreement prohibited him from discussing cases he worked on as a law clerk, suggesting that he *did* work on criminal cases (as his cover letter stated) but was not allowed to discuss them outside the Fourth District.

¶ 76    The hiring committee members' notes further muddle the picture of what happened in Chapman's interview. Some of the notes corroborate the hiring committee members' affidavits. For example, Ware noted that Chapman was "not crim[inal] defense minded" and said, "[Y]ou guys don't file 2 briefs a month." O'Toole noted that Chapman gave a "harsh assessment of OSAD briefs." But in other respects, the notes contradict the committee members' affidavits and corroborate Chapman's account. For example, O'Toole's notes reflect that Chapman said he

"would welcome supervision." Ware's notes describe Chapman as "funny [and] interesting," but OSAD claims that he was arrogant and argumentative. None of the hiring committee members noted that Chapman mentioned watching *Law & Order*. Based on these notes, a reasonable factfinder could conclude that Chapman's interview did not occur as the hiring committee members now claim, supporting a finding of pretext.

¶ 77    It may be that Chapman's interview performance was a legitimate, nondiscriminatory, and non-pretextual reason for OSAD's decision not to hire him. But to reach that conclusion, a factfinder must first determine what happened during that interview. That determination is almost entirely a credibility contest, so summary decision is not appropriate. See *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

¶ 78    The writing exercise also raises questions of fact. O'Toole gave Chapman's writing exercise a score of 30, the highest of any candidate. OSAD has admitted that Mysza and Ware gave Chapman's writing exercise "artificially" low grades, supporting an inference of pretext. See *McDonnell Douglas*, 411 U.S. at 801 (employment discrimination involves "artificial, arbitrary, and unnecessary barriers to employment"). Among other things, a fact finder must determine why Mysza and Ware gave artificially low grades, what Mysza and Ware's true grades of Chapman's writing exercise would have been, and how to reconcile O'Toole's score with Mysza and Ware's grades. Accordingly, we reverse the grant of summary decision in OSAD's favor.

¶ 79                    C. Chapman's Motion for Summary Decision

¶ 80    Finally, Chapman asks us to grant his motion for summary decision. We will not do so because, as explained above, disputes of material fact preclude either party from being entitled to summary decision.

¶ 81    Altogether, the record evidence in this case could support a conclusion that Chapman was only minimally qualified for the AAD position, and his personality was a poor fit for OSAD. It could also support a conclusion that Chapman was at least as qualified as several other candidates and that his age, which was a noticeable outlier among the candidate pool, played a role in OSAD's decision not to hire him. See *Sola*, 316 Ill. App. 3d at 528 (a petitioner must present sufficient evidence to allow a factfinder to infer that age was a "motivating factor" in the employer's decision). OSAD's right to summary decision is not free from doubt. See *Givens v. City of Chicago*, 2023 IL 127837, ¶ 46. That is particularly true where OSAD cited Chapman's demeanor as a reason for not hiring him. A fact finder must decide whether Chapman is funny and interesting, as Ware noted, or arrogant and abrasive, as Mysza claims, based on in-person testimony at a hearing, not affidavits. Accordingly, we reverse the grant of summary decision in OSAD's favor, affirm the denial of Chapman's motion for summary decision, and remand this case for further proceedings.

¶ 82                                    III. CONCLUSION

¶ 83    For the foregoing reasons, we reverse the vacatur of the order deeming facts admitted by OSAD. We also reverse the grant of summary decision in OSAD's favor. We affirm the denial of Chapman's motion for summary decision and remand this matter for further proceedings consistent with this order.

¶ 84    Affirmed in part, reversed in part; cause remanded.